■ In the Matter of the Claim of JAMIE JOHNSON, Respondent, v ONONDAGA HEATING & AIR CONDITIONING, Appellant, and SPECIAL DISABILITY FUND, Respondent. WORKERS' COMPENSATION BOARD, Respondent. [754 NYS2d 430] —Peters, J. Appeal from a decision of the Workers' Compensation Board, filed June 21, 2001, which ruled that claimant did not voluntarily withdraw from the labor market.

In November 1996, while claimant was employed by Onondaga Heating & Air Conditioning (hereinafter the employer), he injured his back while lifting a garage door. Initially, claimant's doctors considered him to be fully disabled yet, as his condition improved, he was authorized and did return to light duty in February 1997. By March 1997, however, he was laid off due to a lack of work. Kenneth Sweeney, one of the employer's owners, testified that claimant knew that more light duty would be available if he was certified to handle refrigerants. Prior to such time, claimant had twice taken the certification exam and failed, the last of which being only a few months prior to the injury. Claimant denies ever being told that he could return to light duty work if he was, in fact, certified and Sweeney ultimately admitted that he never personally communicated that offer to claimant.

Claimant was seen by various doctors, including an orthopedist, from November 1996 to April 1997. His general physician, Richard Koehler, also recommended a chiropractor, but due to a denial of authorization from claimant's insurer, he did not pursue that course. Claimant did not see Koehler after April 1997 when he was convinced that nothing further could be done. An independent examination in September 1997 confirmed that claimant still had a temporary mild disability.

Claimant began seeing chiropractor William Groetz in January 1998. Groetz initially diagnosed him as having a temporary

total disability due to deterioration caused by a lack of treatment. By November 2000, Groetz found that claimant had reached his maximum medical improvement and that he had a permanent, partial and moderate disability that would prevent him from returning to his former type of work. An independent medical examination agreed with this diagnosis.

Claimant received unemployment insurance benefits and was referred to various businesses, similar to the employer's, but none would hire him due to his work restrictions. Claimant was also unsuccessful in his own pursuit of employment. Eventually, he began to help his live-in girlfriend, Ruth Nelepovitz, in her bar for a few hours a week without pay. It was not until 1998 that claimant worked approximately 30 hours a week in the bar in return for room and board and also picked up part-time work from a friend, Robert Alberti. Upon the advice of Groetz, claimant applied for services in March 1998 at the Office of Vocational and Educational Services for Individuals with Disabilities (hereinafter VESID). Claimant was found eligible for VESID services in October 1998, yet at a November 1998 meeting, claimant told VESID counselor James Egan that he did not feel that his disability allowed him to fully participate in VESID programs at such time.

After a hearing in May 1998, the Workers' Compensation Law Judge (hereinafter WCLJ) found no voluntary removal from the labor market. When the Workers' Compensation Board reopened the record and referred the case back to the WCLJ to determine claimant's involvement with VESID, the WCLJ found no reason to change the initial determination. The WCLJ also found a permanent mild disability and ordered compensation and medical care. The Board, in a decision filed on June 21, 2001, affirmed, prompting this appeal.

"Whether a claimant has voluntarily withdrawn from the labor market is a factual issue for the Board to resolve and, if supported by substantial evidence in the record, the * * * resolution of that issue will not be disturbed" (*Matter of Beehm v Educational Opportunity Ctr., County of Rensselaer*, 272 AD2d 808, 808 [citation omitted]; *see Matter of Camarda v New York Tel.*, 262 AD2d 816, 816), even if there is a discrepancy in proof regarding claimant's search for employment (*see Matter of Oken v Stanmorer Liq. Co.*, 251 AD2d 719, 719). Here, the record is replete with claimant's testimony regarding the efforts he made to procure work between March 1997 through June 1998. Claimant's testimony further detailed the work he performed for Nelepovitz after the 1998 hearing, as well as the work he performed for Alberti. Claimant explored retraining options at

VESID and, by the time of the second VESID interview, was working approximately 30 hours a week at the bar. Hence, despite evidence in the record that could support a contrary determination (*see Matter of Beehm v Educational Opportunity Ctr., County of Rensselaer, supra* at 808), substantial evidence supports the Board's determination that claimant had not voluntarily withdrawn from the labor market.

We further find, despite the employer's contentions, that there exists substantial evidence to support the determination that claimant's disability caused or contributed to his reduced earnings. As this issue is also within the province of the Board, it shall remain undisturbed because of the presence of requisite record support (*see Matter of Coyle v Intermagnetics Corp.*, 267 AD2d 621, 622; *Matter of Haibel v C.G. Haibel, Inc.*, 101 AD2d 678, 679). Here, although the employer indicated that claimant would have been rehired if he passed a certifying test for refrigerants, it is clear from this record that there was no firm offer for continued employment. Claimant also continued to look for work through June 1998 and claimed that businesses similar to the employer's did not want to hire him because of his disability. Claimant further explored alternative options and thereafter performed less demanding work for Nelepovitz and Alberti. Clearly, several doctors opined that claimant was disabled and that such disability limited his ability to work. Hence, as it is further settled that once claimant's work-related permanent partial disability has been established, an inference will arise that the "subsequent loss of wages [was] attributable to [these] physical limitations" (*Matter of Coyle v Intermagnetics Corp., supra* at 622; *see Matter of Dudlo v Polytherm Plastics*, 125 AD2d 792, 793), we find that the employer failed to rebut the inference of causation or prove that the reduction in employment was solely due to factors unrelated to the disability (*see Matter of Dudlo v Polytherm Plastics, supra* at 793).

As to alleged inconsistencies between the testimony of claimant, Nelepovitz and Alberti, we again note that witness credibility falls within the province of the Board (*see Matter of White v Dean's Food & Vegetable Co.*, 288 AD2d 649, 649) and that only where such "testimony is replete with inconsistencies in the face of the unimpeached testimony of a number of impartial witnesses" (*Matter of Lewis v Cambridge Filter Corp.*, 132 AD2d 802, 803, *lv dismissed* 70 NY2d 871, *lv denied* 71 NY2d 805) may this Court overturn the Board's determination. We do not find such inconsistencies here and the employer points to nothing in the record to buttress its position.

Finally, with the Board "not required to 'explicitly distinguish

in its written decisions each and every arguably similar case it previously has decided'" (*Matter of Teal v Albany Capitaland Enters.*, 259 AD2d 859, 860-861, *lv dismissed* 93 NY2d 1041, quoting *Matter of Blount [Whalen's Moving & Stor. Co.— Sweeney]*, 217 AD2d 879, 880; *cf. Matter of Paolucci v Capital Newspapers*, 197 AD2d 811, 811-812) and with the decisions cited by the employer not demonstrating that the facts in those cases are "essentially the same" (*Matter of Teal v Albany Capitaland Enters., supra* at 860), no further review is required. Having reviewed and rejected the employer's remaining contentions as being without merit, the decision is affirmed.

Cardona, P.J., Crew III, Mugglin and Lahtinen, JJ., concur. Ordered that the decision is affirmed, without costs.