In the Matter of the Claim of JAMES TIPPING, Appellant, v NATIONAL SURFACE CLEANING MANAGEMENT, INC., et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [816 NYS2d 202]—

Rose, J. Appeal from a decision of the Workers' Compensation Board, filed May 5, 2005, which ruled that claimant voluntarily withdrew from the labor market and denied his claim for workers' compensation benefits.

The Workers' Compensation Board found that claimant suffers occupational asbestos-related pleural disease, he has a permanent partial disability, this disability was a factor contributing to his early retirement with a reduced pension at the age of 55, and his withdrawal from the workforce at that time was therefore involuntary. These findings are not in dispute. Despite the Board's recognition that claimant's retirement was involuntary, however, it concluded that claimant voluntarily withdrew from, and was not attached to, the labor market as of the date of his retirement because he admitted that he had not sought work within his physical restrictions postretirement. Finding that this shifted the burden to claimant to prove that his reduced earning capacity continued to be due to his disability, the Board denied the claim for workers' compensation benefits. Claimant appeals, contending that the Board erred as a matter of law by viewing his testimony that he had not sought postretirement work within his physical restrictions as defeating the inference that his permanent partial disability continued to contribute to his subsequent reduced earning capacity.

While the Board properly found that claimant's decision to retire was due, at least in part, to his work-related permanent partial disability, and his retirement was, therefore, an involuntary withdrawal from the labor market, it erred in then concluding that claimant's failure to seek employment within his physical limitations after the date of his retirement made his withdrawal voluntary (see Matter of Pittman v ABM Indus., Inc., 24 AD3d 1056, 1057 [2005]). As we explained in Pittman,

the Board's initial determination that claimant's retirement was involuntary gave rise to an inference that his reduced earning capacity continued after retirement. To overcome the inference, there must then be direct and positive proof that something other than the disability was the sole cause of his postretirement reduced earning capacity. "Claimant's testimony that [he] had not looked for work after retiring did not defeat the inference that [his] partial disability continued to contribute to [his] reduced earning capacity, as there is no evidence that the failure to seek employment was the sole cause of the subsequent reduction" (*id.* at 1058; *see Matter of Leeber v LILCO*, 29 AD3d 1198 [2006] [decided herewith]; *Matter of Jiminez v Waldbaums*, 9 AD3d 99, 100 [2004]).

Mercure, J.P., Spain and Kane, JJ., concur.

Carpinello, J. (concurring). I concur in the result only upon constraint of this Court's prior determinations in *Matter of Pittman v ABM Indus., Inc.* (24 AD3d 1056 [2005]) and *Matter of Jiminez v Waldbaums* (9 AD3d 99 [2004]). In my view, however, a conscious refusal to seek employment consistent with one's medical limitations constitutes a voluntary withdrawal from the labor market. These decisions hold that a failure to seek *any* employment, even employment approved by a treating physician, is insufficient to defeat the inference that a claimant's partial disability contributes to the claimant's reduced earnings in retirement (*id.*). By so ruling, this Court has effectively deprived every workers' compensation carrier of an opportunity to rebut the inference. I view a decision not to seek any employment within one's medical restrictions to be sufficient proof that something other than the disability was the sole cause of a claimant's reduced earning capacity. *Pittman* and *Jiminez* have effectively created an irrebutable presumption out of an inference and have thwarted the intent of the Legislature by creating a lifetime "retirement supplement without any reasonable connection between the disability and any supposed loss of wages" (*Matter of Mazziotto v Brookfield Constr. Co.*, 40 AD2d 245, 248 [1972]).

*Pittman* and *Jiminez* are also contrary to the holding in *Matter of Scarpelli v Bevco Trucking Corp.* (305 AD2d 892 [2003]), wherein this Court affirmed a Workers' Compensation Board decision that a permanently partially disabled claimant who failed to seek other work after retirement had voluntarily withdrawn from the labor market. This Court specifically held in that case that the claimant had "not sought work of any kind since his retirement and, thus, there is no evidence that his disability contributed to his inability to obtain employment" (*id.*

at 893). Lastly, *Pittman* and *Jiminez* illogically create a new class of claimants—permanently partially disabled retirees—who are not required to show that their diminution in income is attributable to their disability, even though permanently partially disabled claimants who do not retire must make such a showing (*see Matter of Rothe v United Med. Assoc.*, 18 AD3d 1093, 1094 [2005]; *see also Matter of Capezzuti v Glens Falls Hosp.*, 282 AD2d 808, 810 [2001]; *Matter of Campbell v AC Rochester Prods., Div. of Gen. Motors Corp.*, 268 AD2d 711, 712 [2000]).

Ordered that the decision is reversed, with costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.