[970 NE2d 823, 947 NYS2d 788]

In the Matter of the Claim of Rocio Zamora, Respondent, v New York Neurologic Associates et al., Appellants. Workers' Compensation Board, Appellant.

Argued March 20, 2012; decided May 1, 2012

**POINTS OF COUNSEL**

*Vecchione, Vecchione & Connors*, Garden City Park (*Michael F. Vecchione* and *Sean J. McKinley* of counsel), for New York Neurologic Associates and another, appellants. I. There is a distinction between those cases where a claimant has involuntarily retired and other cases where a claimant has involuntarily withdrawn from the labor market. (*Matter of Peck v James Sq. Nursing Home*, 34 AD3d 1033; *Matter of Hare v Champion Intl.*, 50 AD3d 1254; *Matter of Leeber v LILCO*, 29 AD3d 1198; *Matter of Tipping v National Surface Cleaning Mgt., Inc.*, 29 AD3d 1200; *Matter of Bryant v New York City Tr. Auth.*, 31 AD3d 936; *Matter of Jiminez v Waldbaums*, 9 AD3d 99.) II. Public policy considerations must encourage claimants to be productive within their physical limitations. (*Matter of Peck v James Sq. Nursing Home*, 34 AD3d 1033; *Matter of Tipping v National Surface Cleaning Mgt., Inc.*, 29 AD3d 1200; *Matter of Mazziotto v Brookfield Constr. Co.*, 40 AD2d 245.) III. Because nonretired claimants must search for work within restrictions, the claimant's failure to do so warrants that indemnity benefits cease. (*Matter of Rothe v United Med. Assoc.*, 18 AD3d 1093; *Matter of Johnson v Onondaga Heating & A.C.*, 301 AD2d 903.)

*Eric T. Schneiderman, Attorney General,* Albany (*Paul Groen-wegen, Barbara D. Underwood* and *Andrew D. Bing* of counsel), for New York State Workers' Compensation Board, appellant. The Workers' Compensation Board's determination that claimant failed to show that she had sought employment consistent with her disability was based on substantial evidence and should not have been reversed on the basis of a judicially mandated inference. (*Matter of Jordan v Decorative Co.,* 230 NY 522; *Matter of Matise v Munro Waterproofing Co.,* 293 NY 496; *Matter of Croce v Ford Motor Co.,* 307 NY 125; *Matter of Tallini v Martino & Son,* 58 NY2d 392; *Burns v Varriale,* 9 NY3d 207; *Matter of Bourne [Corsi],* 282 App Div 1; *Matter of Nickens v Randstad,* 18 AD3d 1008; *Matter of Helfrick v Dahlstrom Metallic Door Co.,* 256 NY 199; *Matter of Chetney v Manning Co.,* 273 NY 82; *Matter of Schechter v State Ins. Fund,* 6 NY2d 506.)

*Grey & Grey, L.L.P.,* Farmingdale (*Robert E. Grey* of counsel), for respondent. I. There is no statutory authority for appellants' contention that a permanently partially disabled worker must prove "attachment to the labor market" as a condition for receipt of benefits. (*Matter of Needleman v Queensboro Med. Group,* 31 AD2d 383; *Matter of Carroll v Knickerbocker Ice Co.,* 218 NY 435; *Matter of Waters v Taylor Co.,* 218 NY 248; *Matter of McCormack v National City Bank of N.Y.,* 303 NY 5; *Crosby v State of N.Y., Workers' Compensation Bd.,* 57 NY2d 305; *Matter of Richardson v Fiedler Roofing,* 67 NY2d 246; *Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577; *Lawrence Constr. Corp. v State of New York,* 293 NY 634; *Matter of Balcerak v County of Nassau,* 94 NY2d 253; *Matter of Alonzo M. v New York City Dept. of Probation,* 72 NY2d 662.) II. The decisions of this Court and the Appellate Division, Third Department, establish that where the injured worker's loss of earnings is caused by the compensable injury, the burden of proof rests with the employer, not the claimant. (*Matter of Jordan v Decorative Co.,* 230 NY 522; *Matter of Roberts v General Elec. Co.,* 6 AD2d 43; *Burns v Varriale,* 9 NY3d 207; *Matter of Phonville v New York & Cuba Mail S.S. Co.,* 226 NY 622; *Dzink v United States R.R. Admin.,* 204 App Div 164; *Bello v General Elec. Co.,* 204 App Div 613; *Becker v General Elec. Co.,* 210 App Div 495; *Matter of Parrilla v Leemar Knitting Mills,* 27 AD2d 965; *Matter of Doberstein v Marshall,* 37 AD2d 1024; *Matter of Ginn v Rapid Serv. Press,* 222 App Div 406, 248 NY 563.) III. There is no meaningful distinction between "retirement" and "non-retirement" cases on the issue of voluntary withdrawal from the labor market. (*Matter of Leeber v LILCO,* 29 AD3d 1198;

*Matter of Jiminez v Waldbaums,* 9 AD3d 99; *Matter of Roberts v General Elec. Co.,* 6 AD2d 43; *Matter of Topf v American Character Doll & Toy Co.,* 62 AD2d 1111; *Matter of Holman v Hyde Park Nursing Home,* 268 AD2d 705; *Matter of Kalevas v Williams & Co.,* 27 AD2d 22, 20 NY2d 812; *Matter of Tallini v Martino & Son,* 58 NY2d 392; *Matter of Papkoff v Feldman,* 26 AD2d 140, 19 NY2d 932; *Matter of Peck v James Sq. Nursing Home,* 34 AD3d 1033.) IV. The decision of the Appellate Division, Third Department, was proper as a matter of law and did not invade the Workers' Compensation Board's fact-finding authority. (*Matter of Axel v Duffy-Mott Co.,* 47 NY2d 1; *Matter of Kaplan v Zodiac Watch Co.,* 20 NY2d 537; *Matter of Konieczny v Butterflake Shop,* 71 AD2d 718; *Matter of Seymour v Rivera Appliances Corp.,* 33 AD2d 958; *Matter of Krausa v Totales Debevoise Corp.,* 84 AD3d 1545; *Matter of LaCroix v Syracuse Exec. Air Serv., Inc.,* 8 NY3d 348; *Matter of Paduano v New York State Workmen's Compensation Bd.,* 30 AD2d 1009.)

*Law Office of Ralph M. Kirk,* Kingston (*Justin S. Teff* of counsel), for Injured Workers' Bar Association, amicus curiae. I. *Matter of Zamora v New York Neurologic Assoc.* (79 AD3d 1471 [2010]) was correct as a matter of law. (*Matter of Lovell v Berman's Motor Express,* 35 AD2d 765; *Matter of Nickens v Randstad,* 18 AD3d 1008; *Matter of Dudlo v Polytherm Plastics,* 125 AD2d 792; *Matter of Peng Kim v Community Living Corp.,* 253 AD2d 911; *Matter of Jordan v Decorative Co.,* 230 NY 522; *Matter of Coyle v Intermagnetics Corp.,* 267 AD2d 621; *Matter of Roberts v General Elec. Co.,* 6 AD2d 43; *Matter of O'Connell v New York State Workmen's Compensation Bd.,* 14 AD2d 945; *Matter of Mazziotto v Brookfield Constr. Co.,* 40 AD2d 245; *Matter of Boyle v Gatti,* 40 AD2d 1063.) II. *Matter of Zamora v New York Neurologic Assoc.* (79 AD3d 1471 [2010]) was correct as a matter of public policy. (*Jiminez v Waldbaums,* 9 AD3d 99; *Tallini v Martino & Son,* 58 NY2d 392.)

### OPINION OF THE COURT

Pigott, J.

In this appeal we are called upon to decide whether the Workers' Compensation Board must infer, from the finding that a claimant withdrew from her employment due to an accident at her workplace, that her post-accident loss of wages is attributable to physical limitations caused by the accident. We hold that the Board is not required to draw that inference.

Claimant Rocio Zamora was working as a phlebotomist for New York Neurologic Associates, on January 29, 2003, when a

computer monitor fell off a shelf and struck her upper back. She suffered a torn tendon in her left shoulder and two herniated discs in the cervical spine. On April 25, 2003, Zamora told her employer that she would not be returning to work because she did not feel well enough to perform her duties. Thereafter, Zamora was employed on and off, on a part-time basis, receiving workers' compensation benefits for her loss of wages attributable to the accident. She underwent spinal surgery in December 2005. On January 18, 2007, Zamora returned to full-duty work as a phlebotomist.

On May 29, 2007, following a hearing, the Workers' Compensation Board classified Zamora with a permanent partial disability. No benefits were ordered because Zamora was engaged in full-duty work at the time. Zamora continued to work until December 21, 2007, when various health issues forced her to quit. As she later explained, she had "migraines, numbness in [her] hand, [and] back pain" and she found it difficult to "use [her] hands to do the blood pressure and draw blood."

In 2008, Zamora posted her resume on job-search Web sites, seeking both general phlebotomy jobs and customer service positions. She had two extremely brief periods of employment as a phlebotomist at New York hospitals. On May 22, 2008, a Workers' Compensation Law Judge "continued" Zamora's case so that a hearing could be held on issues including whether she had voluntarily withdrawn from the labor market.

At the hearing, held on August 5, 2008 before a Workers' Compensation Law Judge, Zamora testified concerning her health and her attempts to find employment. Asked what injuries contributed to her disability, she mentioned her neck and shoulder, as well as health issues that she said were unrelated to her workplace accident, namely migraines, hernias, and pinched nerves in her lower back. Questioned about her attempts to find work, Zamora explained that she was trying to look for a job that was "lighter," or less physically taxing, than a phlebotomist position. She had submitted her resume for customer service positions, but those jobs and others she had tried to get required more lifting or standing than she could manage, because of her lower back condition and hernias.

The Workers' Compensation Law Judge found that Zamora had made a valid effort to find work and "ha[d] not voluntarily removed herself from the labor market." The insurance carrier of New York Neurologic Associates sought review by the Workers' Compensation Board.

On March 13, 2009, the Board denied Zamora's claim for benefits after December 21, 2007. The Board found that Zamora had "failed to conduct a reasonable job search" after December 2007, in that the "jobs under consideration by the claimant were not reasonable given her work restrictions, which primarily involve her unrelated low back condition." The Board therefore ruled that, although Zamora's original withdrawal from the job market was not voluntary, she had not established attachment to the labor market and continuing entitlement to benefits.

The Appellate Division, in a 3-2 decision, reversed the Board's determination (79 AD3d 1471 [2010]). The majority inferred, from the fact that Zamora did not voluntarily withdraw from the workforce in 2007, that her "subsequent loss of wages was attributable to her disability," adding that "it was incumbent upon the employer to rebut the inference of causation or prove that the reduction in employment was solely due to factors unrelated to the disability" (*id.* at 1472 [internal quotation marks omitted]). We now reverse.

As this Court recently noted, a central question for the Board to resolve, before awarding wage replacement benefits in a non-schedule permanent partial disability case, is "whether a claimant has maintained a sufficient attachment to the labor market" (*Burns v Varriale*, 9 NY3d 207, 216 [2007]; *see Matter of Jordan v Decorative Co.*, 230 NY 522, 526-527 [1921]). By finding alternative work consistent with his or her physical limitations, or at least showing reasonable efforts at finding such work, the claimant can prove to the Board that the cause of his or her reduced income is a disability, rather than unwillingness to work again. "Claimant must demonstrate that his or her reduced earning capacity is due to the disability, not . . . factors unrelated to the disability" (*Burns*, 9 NY3d at 216 [internal quotation marks omitted]).

In reaching its decision on this question, the Board will, of course, consider the circumstances under which claimant originally stopped full-duty work. "If the Board determines that a workers' compensation claimant has a permanent *partial* disability and that the claimant retired from his or her job due to that disability, an inference that his or her reduced future earnings resulted from the disability *may* be drawn" (*id.* [emphasis added]). The same is true regardless of whether claimant has completely retired from the work force or merely withdrawn from the particular employment in which she was engaged at

the time of her accident. An inference of causation may be drawn from the disability-related withdrawal, depending on the nature of the disability and the nature of the claimant's work.

In many of its decisions, the Third Department has noted, correctly, that "a claimant's work-related permanent partial disability *allows* an inference that a subsequent loss of wages is attributable to physical limitations" (*Matter of Coyle v Intermagnetics Corp.*, 267 AD2d 621, 622 [3d Dept 1999] [emphasis added]; *see also e.g. Matter of Mazziotto v Brookfield Constr. Co.*, 40 AD2d 245, 247 [3d Dept 1972]; *Matter of Miller v Pan Am. World Airways*, 46 AD2d 718 [3d Dept 1974]). Recently, however, the Third Department has treated the inference as required, or presumed, rather than merely permitted. For example, the court has written that "once claimant's work-related permanent partial disability has been established, an inference *will* arise that the subsequent loss of wages was attributable to these physical limitations" (*Matter of Johnson v Onondaga Heating & A.C.*, 301 AD2d 903, 905 [3d Dept 2003] [internal quotation marks and brackets omitted and emphasis added]; *see also e.g. Matter of Pittman v ABM Indus., Inc.*, 24 AD3d 1056, 1057-1058 [3d Dept 2005]; *Matter of Dudlo v Polytherm Plastics*, 125 AD2d 792, 793 [3d Dept 1986]).

The correct principle is the former one; the Board may, but need not, infer that the claimant cannot find a suitable job because of her disability. If, for example, the Board considers a disability to be one that prevents the claimant from pursuing the trade in which she was engaged at the time of the accident, while allowing her to undertake many other jobs that pay as well, it will likely not make the inference. The Third Department's recent doctrine that the Board *must* find causation "effectively created [a] . . . presumption out of an inference" (*Matter of Tipping v National Surface Cleaning Mgt., Inc.*, 29 AD3d 1200, 1201 [3d Dept 2006, Carpinello, J., concurring]; *see also* 79 AD3d at 1473 [Cardona, P.J., and Garry, J., dissenting]). There is no precedent in our decisions for this theory, which would illogically constrain the ability of the Board to find facts, and would shift the burden of proof from claimant to employer. Consequently, the Appellate Division's decision below was in error.

Finally, we consider the Board's finding that, as of August 2008, Zamora had not made a reasonable search for work consistent with her physical restrictions. That determination is a factual one that an appellate court must uphold as long as there

is substantial evidence to support it (*see generally Matter of Capizzi v Southern Dist. Reporters*, 61 NY2d 50, 54 [1984]; *Matter of Axel v Duffy-Mott Co.*, 47 NY2d 1, 6 [1979]). We may not weigh the evidence or reject the Board's choice simply because a contrary determination would have been reasonable. Here, the evidence concerning the types of work that Zamora had attempted to find and her lack of success in those endeavors, together with the absence of evidence of attempts to find less physically taxing work, constitute relevant proof adequately supporting the Board's conclusion. Therefore, we are satisfied that there was substantial evidence to support the Board's determination.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the decision of the Workers' Compensation Board reinstated.

Chief Judge LIPPMAN (dissenting). Nearly a century ago in *Matter of Waters v Taylor Co.* (218 NY 248, 251-252 [1916]), we held that what was then known as the Workmen's Compensation Act

"[wa]s framed on broad principles for the protection of the work[er]. Relief under it . . . rest[ed] on the economic and humanitarian principles that compensation should be given . . . for earning capacity destroyed by an accident in the course of or connected with [one's] work, and this not only for [the worker's] own benefit[,] but for the benefit of the state[,] which otherwise might be charged with [the worker's] support."

Because the majority's holding lacks statutory support and runs counter to the remedial purpose of the Workers' Compensation Law, I respectfully dissent.

"Attachment to the labor market" is a concept that is conspicuously absent from the Workers' Compensation Law. The majority's formulation of the issue in this case distracts from the proper identification of the question before the Court, which is whether a worker who has involuntarily withdrawn from his or her employment due to a compensable disability must demonstrate "attachment to the labor market" in order to be eligible to receive benefits. Nothing in the statute suggests that this is a prerequisite to entitlement to workers' compensation benefits.

An inference that the loss in wage earning capacity is due to the permanent partial disability (PPD) arises where the

claimant left his or her job because of that disability (*see Matter of Leeber v LILCO*, 29 AD3d 1198, 1199 [3d Dept 2006] [holding that "if claimant's permanent partial disability caused or contributed to his decision to retire, an inference arises that his earning capacity is reduced by the disability and claimant is entitled to compensation until the inference is removed from the case"]; *Matter of Tipping v National Surface Cleaning Mgt., Inc.*, 29 AD3d 1200, 1201 [3d Dept 2006] [holding that "the (Workers' Compensation) Board's initial determination that claimant's retirement was involuntary gave rise to an inference that his reduced earning capacity continued after retirement"]). The claimant's employer or the insurance carrier can rebut the inference by presenting "direct and positive proof that something other than the disability was the sole cause of claimant's reduced earning capacity after retirement" (*Matter of Pittman v ABM Indus., Inc.*, 24 AD3d 1056, 1058 [3d Dept 2005]). I see no logical reason to treat the involuntary withdrawal that occurred in this case any differently from the Third Department's treatment of involuntary retirement, which is consistent with the Workers' Compensation Law's plain language and core objectives.*

Whether a claimant suffering from a PPD has maintained an "attachment to the labor market" should only be considered where the claimant seeks total disability compensation (*see e.g. Matter of Parrilla v Leemar Knitting Mills*, 27 AD2d 965 [3d Dept 1967]), or where the claimant has voluntarily withdrawn from the labor market (*see e.g. Matter of Peck v James Sq. Nursing Home*, 34 AD3d 1033, 1034 [3d Dept 2006] [holding that the "claimant (suffering from a PPD) ha(d) an obligation to demonstrate attachment to the labor market with evidence of a search of employment within medical restrictions," where there was "no finding of involuntary retirement"]). This is consistent with the purpose of the Workers' Compensation Law, which is to compensate for the claimant's loss in wage earning capacity. It is reasonable that a claimant suffering from a PPD who has

---

* In *Burns v Varriale* (9 NY3d 207 [2007]), cited by the majority (*see* majority op at 191-192), this Court was called upon to address a question entirely different from the one raised by this case. *Burns* was a "proceeding to extinguish a lien asserted pursuant to Workers' Compensation Law § 29" (9 NY3d at 210). Although *Burns* referred to the inference discussed in *Leeber* and *Tipping*, contrary to the majority's suggestion, *Burns* did not squarely address the issue before the Court on this appeal.

left his or her job voluntarily—that is to say, for reasons unrelated to the disability—should not benefit from the inference that the loss in wage earning capacity is due to the disability, precisely because the claimant chose to leave his or her employment and was not forced to do so by reason of the compensable disability. Indeed, *Matter of Jordan v Decorative Co.* (230 NY 522 [1921]), relied upon by the majority, was a case in which, unlike here, the claimant obtained a new job after leaving the job where he sustained his disability, and refused a position offered by his new employer even though he was physically able to do the work. The claimant in *Jordan* affirmatively refused work and voluntarily left his new position even though there was no shortage of work there that he was physically capable of doing. Nothing of the sort occurred in this case. There is no evidence tending to suggest that claimant, who suffered permanent injuries requiring spinal fusion surgery when a computer monitor fell and struck her, either affirmatively refused work that she could do or voluntarily left any job. Indeed, quite the opposite is true. Below, the Workers' Compensation Board concluded that claimant involuntarily left her job at New York Neurologic Associates (meaning that her decision to withdraw from that position was related to her PPD), and attempted to find work elsewhere but found that she suffered from certain physical limitations that prevented her from performing tasks essential to those forms of employment, such as heavy lifting.

The majority extends the rule regarding "attachment to the labor market" beyond the limits that can reasonably be imposed on the application of such a rule when considering the remedial and humanitarian roots of the critically important statute that we address today. Workers' compensation benefits are intended to do what the name implies: compensate workers for losses in wage earning capacity incurred due to work-related injuries. To impose barriers to access to those benefits, where there is no basis for such prerequisites, contravenes the law and violates basic principles of fairness for debilitated workers injured in the course of their employment. For these reasons, I respectfully dissent and would affirm the order of the Appellate Division.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Chief Judge LIPPMAN dissents and votes to affirm in a separate opinion in which Judges CIPARICK and JONES concur.

Order reversed, etc.