Pritzker, J.
 

 Appeal from a decision of the Workers’ Compensation Board, filed February 8, 2016, which ruled, among other things, that claimant voluntarily withdrew from the labor market.
 

 Claimant, an assistant director of finance, has an established claim for bronchiectasis, mycobacterium infection and exacerbation of asthma due to exposure to environmental irritants at work. Claimant’s work-related respiratory condition reportedly began in 2009 during construction on the building where she worked and, after accommodations did not alleviate her symptoms, on February 1, 2011, the employer moved her work location to a different building that was free of irritants. Before the move, claimant filed a complaint against the employer for allegedly failing to accommodate her medical restrictions and for retaliation. Claimant continued to work in the new location until she entered into a separation agreement with the employer on July 6, 2011, which, among other things, ended claimant’s employment, settled her complaint and provided 13 months of severance pay. Claimant received unemployment insurance benefits and, over a year after leaving, filed for workers’ compensation benefits, claiming that she had ceased working in part due to her causally-related respiratory problems. The Workers’ Compensation Board later determined that claimant’s accidental injury resulted from an unusual environmental condition and set an accident date of February 1, 2011, the date she was transferred out of her building. Following a hearing on claimant’s entitlement to compensation awards, the Board determined that her departure from her employment in July 2011 was voluntary and not due to compensable medical conditions and that she had not remained attached to the labor market as required to receive an award for loss of wage-earning capacity. Claimant now appeals.
 

 We affirm. “Generally, a claimant who voluntarily withdraws from the labor market by retiring is not entitled to workers’ compensation benefits unless the claimant’s disability caused or contributed to the retirement” (Matter of Greco-Meyer v Nassau County Police Dept., 139 AD3d 1296, 1297 [2016] [internal quotation marks and citation omitted], lv denied 28 NY3d 901 [2016]; see Matter of Lombardo v Otsego County Empls., 125 AD3d 1079, 1080 [2015]; Matter of Bury v Great Neck UFSD, 14 AD3d 786, 787 [2005]). “Whether a claimant has voluntarily withdrawn from the labor market. . . is a factual issue for the Board to resolve, and its determination must be upheld if supported by substantial evidence” (Matter of Bury v Great Neck UFSD, 14 AD3d at 787; see Matter of Greco-Meyer v Nassau County Police Dept., 139 AD3d at 1297). Here, claimant testified that her work-related respiratory problems began in 2009 and continued after she was transferred out of the building, that she was “sick all of the time” and did not improve, and that she entered the separation agreement and ceased working due to her work-induced health problems.
 

 However, as the Board correctly concluded, the medical evidence in the record from this period does not support claimant’s contention. To that end, the limited medical records submitted by claimant from Raisa Mitelman, claimant’s treating internal medicine physician, reflect, to the extent legible, that claimant was experiencing exacerbation of her asthma from the construction dust during this time and could not be exposed to construction dust. None of the submitted medical records for the time period surrounding when she departed her employment supports the conclusion that claimant’s work-related respiratory condition was disabling or that a compensable condition contributed to her decision to enter the separation agreement and cease working, and she conceded in her testimony that she had not been advised by medical providers to stop working. Deferring to the Board’s credibility and factual determinations (see Matter of Palmer v Champlain Val. Specialty, 149 AD3d 1342, 1343 [2017]), we find that substantial evidence supports its conclusion that claimant’s departure from her employment in July 2011 was voluntary (see Matter of Greco-Meyer v Nassau County Police Dept., 139 AD3d at 1297).
 

 Notwithstanding claimant’s voluntary departure, an award for loss of wage-earning capacity is permitted provided that she demonstrate that she remained sufficiently attached or reattached to the labor market (see Matter of Hughes v Coghlin Elec. Contr., 147 AD3d 1168, 1168-1169 [2017]; see also Matter of Zamora v New York Neurologic Assoc., 19 NY3d 186, 191 [2012]). Claimant could do so “with evidence of a search for employment within medical restrictions” (Matter of Cole v Consolidated Edison Co. of N.Y., Inc., 125 AD3d 1084, 1085 [2015]; see Matter of McKinney v United States Roofing Corp., 150 AD3d 1377, 1378 [2017]; Matter of Cruz v Buffalo Bd. of Educ., 138 AD3d 1316, 1317 [2016]), which could demonstrate that “the cause of. . . her reduced income is a disability, rather than [an] unwillingness to work again” (Matter of Zamora v New York Neurologic Assoc., 19 NY3d at 191). Claimant testified that she began working as an accountant six hours per week in July 2013 and has not looked for other work. Claimant relied upon the advice of Mitelman that she could only work one day per week due to the side effects of medications, shortness of breath and weakness due to her respiratory conditions, including a progressive mycobacterium pulmonary infection in 2014. Mitelman classified her as having a marked disability. However, the Board found more persuasive the testimony of Claire Keating, the pulmonary specialist who began treating claimant in September 2012. Keating concluded that, as a result of claimant’s recurring infections and the symptoms related to her respiratory condition, she had a mild to moderate disability. Keating testified that claimant could work a job that provided some flexibility to permit her to take time off when she is not feeling well or to attend medical appointments and that she would need to avoid respiratory irritants, but he did not advise her against full-time work. Resolution of conflicting medical evidence is for the Board to resolve and, given that substantial evidence supports its conclusion that claimant was not attached to the labor market in that she had not searched for employment consistent with her medical restrictions as defined by Keating, the Board’s decision will not be disturbed Csee Matter of McKinney v United States Roofing Corp., 150 AD3d at 1378; Matter of Hughes v Coghlin Elec. Contr, 147 AD3d at 1168-1169).
 

 Garry, J.P., Egan Jr., Lynch and Aarons, JJ., concur.
 

 Ordered that the decision is affirmed, without costs.