Matter of Scott v Visiting Nurses Home Care (2019 NY Slip Op 04259)





Matter of Scott v Visiting Nurses Home Care


2019 NY Slip Op 04259


Decided on May 30, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 30, 2019

527808

[*1]In the Matter of the Claim of THERESA SCOTT, Appellant,
v
VISITING NURSES HOME CARE et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.

Calendar Date: May 2, 2019

Before: Garry, P.J., Mulvey, Aarons, Rumsey and Pritzker, JJ.


Buckley, Mendleson, Criscione & Quinn, PC, Albany (Richard J. Frontero III of counsel), for appellant.
William O'Brien, State Insurance Fund, Albany (Edward Obertubbesing of counsel), for Visiting Nurses Home Care and another, respondents.



MEMORANDUM AND ORDER
Aarons, J.
Appeal from a decision of the Workers' Compensation Board, filed May 10, 2018, which ruled, among other things, that claimant was required to demonstrate an ongoing attachment to the labor market and denied her request to reinstate her award.
Claimant has an established claim for injuries to her head and neck resulting from a 1993 accident. She was classified in 1998 as having a permanent partial disability and received continuing awards based upon her reduced wage-earning capacity. In 2014, the employer's workers' compensation carrier moved to reopen the claim on the question of labor market attachment, contending that claimant's post-classification reduction in wage-earning capacity was due to her failure to pursue job leads. The Workers' Compensation Board granted the request to reopen by decision filed in October 2015, and returned the case to the calendar to address claimant's attachment to the labor. Following a hearing on December 29, 2015, a Workers' Compensation Law Judge found that claimant failed to remain attached to the labor market by failing to either search for work or participate in job training and placement services. By decision filed on June 27, 2016, the Board agreed, finding that claimant had failed to demonstrate any continued attachment to the labor market after the issue was raised, and that she had voluntarily withdrawn from the labor market effective December 29, 2015 (the last hearing date), and suspended her awards effective that date. Claimant did not appeal or request full Board review and/or reconsideration.
Workers' Compensation Law § 15 (3) (w) was thereafter amended, effective April 10, 2017 (L 2017, ch 59, part NNN, subpart A, § 1), as part of the 2017 Workers' Compensation Reform Act. Claimant then filed a request for further action, contending that the recent amendment entitled her to reinstatement of her permanent partial disability benefits as of December 29, 2015. A Workers' Compensation Law Judge concluded that the 2017 amendment did not apply here, where, prior to that amendment, the Board had found that claimant had not remained attached and had voluntarily withdrawn from the labor market. The Board upheld that determination, and claimant appeals.
The 2017 amendment to Workers' Compensation Law § 15 (3) (w) provides, in relevant part, that in certain cases of permanent partial disability, "compensation . . . shall be payable during the continuance of such permanent partial disability, without the necessity for the claimant who is entitled to benefits at the time of classification to demonstrate ongoing attachment to the labor market" (see Matter of O'Donnell v Erie County, 162 AD3d 1278, 1280 [2018] [emphasis added], lv granted 32 NY3d 907 [2018]). As such, the amendment relieves certain permanent partial disability claimants from the need to demonstrate a continued attachment to the labor market, as previously required in order to be entitled to wage replacement benefits (see Matter of Zamora v New York Neurologic Assoc., 19 NY3d 186, 191 [2012]). The narrow issue presented here is whether the amendment applies retroactively to a claimant classified as permanently partially disabled in 1998, who was found by the Board in 2016, upon reopening her claim, to not be attached to, and to have voluntarily withdrawn from, the labor market, resulting in the suspension of her award effective December 29, 2015, all prior to the 2017 amendment taking effect. Given that the issue is one of statutory interpretation, deference need not be accorded to the Board's interpretation, and we "are free to ascertain the proper interpretation from the statutory language and legislative intent" (Matter of Estate of Youngjohn v Berry Plastics Corp., 169 AD3d 1237, 1239 [2019] [internal quotation marks, brackets and citations omitted]). However, as the proper meaning and application of the added statutory phrase — "entitled to benefits at the time of classification" — is ambiguous, and the legislation does not contain a clear retroactivity provision, examination of the legislative history is required to ascertain legislative intent (see Matter of Shannon, 25 NY3d 345, 351 [2015]).
"Whether, and to what extent, a statute is to be applied retroactively generally requires a determination of legislative intent" (Majewski v Broadalbin-Perth Cent. School Dist., 231 AD2d 102, 105 [1997] [citations omitted], affd 91 NY2d 577, 584 [1998]). Although the amendment provided that it was to "take effect immediately" (L 2017, ch 59, part NNN, subpart A, § 4), this is not dispositive (see Matter of O'Donnell v Erie County, 162 AD3d at 1280), as "the date that legislation is to take effect is a separate question from whether the statute should apply to claims and rights then in existence" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]). Initially, it is clear that the 2017 amendment applies to claimants who had been classified as permanently partially disabled prior to the amendment's effective date. We recognized this in Matter of O'Donnell v Erie County (162 AD3d at 1280), a decision rendered after the Board's decision here, when we noted that, "[a]lthough the amendment does not specifically state that it applies to claimants classified as permanently partially disabled prior to its effective date, the legislative history supports this interpretation" (id.). This does not mean, however, that there is no limit to retroactive application of the amendment, as there are "different degrees of retroactivity" (Becker v Huss Co., 43 NY2d 527, 540 [1978]; accord Matter of Mills v Staffking [Hidden Valley], 271 AD2d 146, 149 [2000]). Hence, the amendment does not necessarily retroactively apply to all claimants previously classified as permanently partially disabled, relieving them of the obligation to show labor market attachment regardless of the procedural posture of their claim. Upon review of the legislative history, we are not persuaded by claimant's argument that Matter of O'Donnell, which applied the 2017 amendment retroactively to a claimant in materially different circumstances, supports or compels retroactive application here.
Significantly, in Matter of O'Donnell, the injured claimant retired from her position following injury and was classified as having a permanent partial disability, and her retirement was deemed to have been an involuntary withdrawal from the labor market. At the time the 2017 amendment went into effect, there had been no final Board determination regarding the claimant's attachment to the workforce, an issue that was then pending. The Board ultimately applied the 2017 amendment to the claimant's pending case and, thus, concluded that she was not required to demonstrate an attachment to the labor market. On appeal, citing the legislative history, we upheld the Board's retroactive application of the 2017 amendment in that circumstance, finding that " the amendment was clearly intended to apply to claimants [such as O'Donnell] who have involuntarily withdrawn from the labor market and are entitled to receive wage replacement benefits having been classified with a permanent partial disability" (Matter of O'Donnell v Erie County, 162 AD3d at 1281 [emphasis added]).
Here, in comparison, in December 2016 — well before the 2017 amendment went into effect — the Board had finally determined, based on then-governing precedent, that claimant was required to but had not remained attached to the workforce and had voluntarily withdrawn therefrom, suspending her award until she demonstrated such attachment. Under these circumstances, the Board properly found that the 2017 amendment did not apply retroactively to rescind the Board's final determination of voluntary withdrawal from the labor market and, therefore, that claimant was obligated to show continuing attachment in order to resume benefits. The legislative history supports this interpretation. To that end, as we noted in Matter of O'Donnell, the Governor's Bill Jacket for this legislation contains a letter from the Board's counsel summarizing the various amendments to the Workers' Compensation Law that were included (see Letter, David F. Wertheim, Workers' Compensation Board General Counsel, Bill Jacket L 2017, ch 59 at 29). On the issue of retroactivity, counsel's letter states that "[t]his amendment . . . affects previously decided cases in which there has not been a finding that the claimant had voluntarily removed him[self] or herself from the labor market at the time of the classification." In Matter of O'Donnell, there had not been a finding of voluntary withdrawal and, instead there had been a finding that the withdrawal had been involuntary (Matter of O'Donnell v Erie County, 162 AD3d at 1280-1281), whereas here there had been a Board finding of voluntary withdrawal. Thus, for this reason, the amendment applied retroactively in Matter of O'Donnell, but retroactivity should not be extended here.
The 2017 amendment provides that it applies to permanent partial disability claimants who are "entitled to benefits at the time of classification" (Workers' Compensation Law § 15 [3] [w])[FN1]. Here, although, at the time of the permanent partial disability classification in 1998, there was no finding regarding claimant's labor market attachment,[FN2] there was a Board determination in 2016 of no attachment and voluntary withdrawal, well in advance of the effective date of the amendment. Nothing in the legislative history or our decision in Matter of O'Donnell supports the conclusion that the 2017 amendment was meant to apply retroactively in these circumstances.
Garry, P.J., Mulvey, Rumsey and Pritzker, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: The letter recognized that, going forward, "it will be important for the Board to make labor market attachment determinations at the time of classification, as claimants 'entitled to benefits' at that time will have no continuing obligation to show labor market attachment under [Workers' Compensation Law] § 15 (3) (w)" (Letter, David F. Wertheim, Workers' Compensation Board General Counsel, Bill Jacket L 2017, ch 59 at 29 [emphasis added]).

Footnote 2: The minutes of the 1998 hearing could not be located.