State of New York OPINION
Court of Appeals This opinion is uncorrected and subject to revision
 before publication in the New York Reports.

 No. 14
 In the Matter of the Claim
 of Sandra L. O’Donnell,
 Respondent,
 v.
 Erie County et al.,
 Appellants.
 Workers’ Compensation Board,
 Respondent.

 Matthew M. Hoffman, for appellants.
 Robert E. Grey, for respondent O’Donnell.
 Patrick Woods, for respondent Workers’ Compensation Board

 RIVERA, J.:

 Employer Erie County and its worker’s compensation carrier challenge a Workers’

 Compensation Board decision upholding claimant’s award for loss of post-accident
 -1-
 -2- No. 14

earnings on the ground that, at the time of her disability classification, claimant failed to

establish that she attempted to and could not find work commensurate with her abilities.

In a shift of position, the Board now maintains that it departed from its administrative

precedent by applying a discretionary inference in favor of claimant as permitted by Matter

of Zamora v New York Neurologic Assoc. (19 NY3d 186 [2012]), without first requiring

claimant to present evidence of her efforts to obtain work or get retrained. All parties agree

that pursuant to Zamora the Board may, but need not, infer from the fact that a claimant

involuntarily retired due to claimant’s permanent partial disability that the claimant’s

reduced post-accident earnings resulted from that disability (id. at 191). All parties also

agree that once initially so classified, a claimant entitled under Workers’ Compensation

Law (“WCL”) § 15 (3) (w) to compensation for the disability-related loss of wage-earning

capacity need not demonstrate ongoing efforts to work or retrain for work after

classification under the 2017 amendment to that provision. Given the parties’ agreement

on the applicable law, and the Board’s representation that it departed from its purported

precedent without explanation, we reverse and remit so that the Board may clarify its

rationale and issue a decision in accordance with Zamora, which should include an

explanation if it chooses to depart from an evidentiary requirement imposed on similarly

situated claimants in prior proceedings.

 I.

 It is undisputed that claimant Sandra O’Donnell worked for respondent Erie County

in various capacities for more than 28 years. While working as a probation officer, she

 -2-
 -3- No. 14

slipped and fell in the course of her job, injuring her back, knees, and elbows. She returned

to work but was unable to perform her duties fully—particularly after the County

transferred her from juvenile probation to adult probation, over claimant’s protests of the

increased pain associated with her new duties, which required more standing and walking.

She applied for and was granted disability retirement from the County and has not worked

since that time.

 After a hearing, a Workers’ Compensation Law Judge (“WCLJ”) found claimant

involuntarily retired, classified her as having a nonschedule permanent partial disability

under WCL § 15 (3) (w), which entitled her to compensation for any disability-related loss

of wage-earning capacity, and excused her from establishing efforts to work. On

administrative appeal, the Board modified the decision by reducing claimant’s percentage

of loss of wage-earning capacity, and otherwise affirmed the WCLJ’s decision. The Board

rejected the argument, advanced by the County and its workers’ compensation coverage

administrator, FCS Administrators (hereinafter “Respondents”), that claimant had not

adequately shown that her lack of employment was a result of her work-related disability,

rather than her preference not to work, within the meaning of Zamora (see 19 NY3d 186).

 Respondents petitioned for review by the full Board. While that request was

pending, the Legislature amended WCL 15 § (3) (w) to provide “compensation . . . during

the continuance of such permanent partial disability, without the necessity for the claimant

who is entitled to benefits at the time of classification to demonstrate ongoing attachment

to the labor market” (see L 2017, ch 59, part NNN). The Board panel, among other things,

 -3-
 -4- No. 14

reaffirmed claimant’s modified award, and further concluded that under WCL 15 (3) (w),

as amended, claimant “is not obligated to demonstrate an ongoing attachment to the labor

market during the continuance of her permanent partial disability.”

 The Appellate Division unanimously affirmed the Board’s decision (162 AD3d

1278 [3d Dept 2018]). We granted respondents leave to appeal (32 NY3d 907 [2018]).

Thereafter, the Board moved to dismiss the appeal and for other relief, arguing that it had

inadvertently strayed from its administrative precedent in this matter. We denied that

motion (33 NY3d 1057 [2019]). In its brief on the merits, the Board continues to press the

argument that its decision below was out of step with its precedent.

 II.

 The Workers’ Compensation Law provides a mechanism for compensation of

workers who lose their earning power as a result of employment-related accidents (see

Matter of Marhoffer v Marhoffer, 220 NY 543, 546-548 [1917]). As relevant here, it is the

Board’s obligation to determine whether the claimant suffered a work-related disability

and the disability caused a wage-earning loss (see WCL § 20). A claimant who suffers a

permanent partial disability—meaning the claimant is rendered less than totally disabled—

“may receive a reduced earnings award” under WCL § 15 (3) (w) if the claimant

“demonstrates that [their] reduced earnings are related to the partial disability” (Burns v

Varriale, 9 NY3d 207, 216 [2007]). However, the Board must find that the reduction in

income is due to the disability and not to an “unwillingness to work again” (Zamora, 19

NY3d at 191). In other words, the claimant is entitled to a statutory award upon proving

 -4-
 -5- No. 14

that there exists a causal link between the claimant’s disability and reduced earning

capacity (see id.; Matter of Jordan v Decorative Co., 230 NY 522 [1921]).

 As this Court explained in Zamora, “a central question for the Board to resolve,

before awarding wage replacement benefits in a nonschedule permanent partial disability

case, is ‘whether a claimant has maintained a sufficient attachment to the labor market,’”

meaning that the claimant is willing to work “consistent with [the claimant’s] physical

limitations” (19 NY3d at 191, quoting Burns, 9 NY3d at 216). If the Board determines

that a claimant classified with a permanent partial disability “‘involuntarily retired from

[the claimant’s] job due to that disability,’” the Board “may” draw an inference that the

claimant’s reduced future earnings resulted from the disability rather than from

unwillingness to work (id. at 191-192, quoting Burns, 9 NY3d at 216). Zamora expressly

rejected the approach espoused in a line of Appellate Division cases that the inference was

mandatory or presumed rather than permissible (see e.g. Matter of Leeber v LILCO, 29

AD3d 1198, 1199 [3d Dept 2006]; Matter of Pittman v ABM Indus., Inc., 24 AD3d 1056,

1057 [3d Dept 2005]). The central holding of Zamora is that a determination of an

involuntary retirement due to a permanent partial disability does not require a finding that

the claimant automatically satisfied the causation prong of the claimant’s burden of proof.

However, the Board may infer as much, based on its analysis of “the nature of the disability

and the nature of the claimant’s work” in the specific case (Zamora, 19 NY3d at 192).

Zamora further explained that if the Board declines to draw such an inference, the claimant

may nevertheless establish through other evidence that the lost earning capacity resulted

 -5-
 -6- No. 14

from the claimant’s disability and not from unwillingness to work, for example “[b]y

finding alternative work consistent with [the claimant’s] limitations, or at least showing

reasonable efforts at finding such work” (id. at 191).

 Here, the parties agree that claimant is permanently partially disabled and that her

retirement was involuntary, but they dispute whether claimant’s loss of earnings was

caused by her disability, and thus makes her eligible for loss of wage compensation under

WCL § 15 (3) (w), as amended. All parties further agree that the 2017 amendment to WCL

§ 15 (3) (w) eliminated any post-classification obligation on the part of a permanent partial

disability claimant who was eligible for benefits when classified to demonstrate ongoing

attachment to the labor market, and does not change the statutory framework pre-

classification. We agree this interpretation is correct. However, claimant’s further

contention that the amendment to WCL § 15 (3) (w) changed the pre-classification

application of the Court’s holding in Zamora is incorrect.

 “[W]e begin our analysis with the language of the statute, recognizing that ‘our

primary consideration is to ascertain and give effect to the intention of the Legislature’”

(Beck Chevrolet Co., Inc. v General Motors LLC, 27 NY3d 379, 389 [2016], quoting

People v Ballman, 15 NY3d 68, 72 [2010]). “In this endeavor we are guided by the

principle that ‘the text of a provision is the clearest indicator of legislative intent and courts

should construe unambiguous language to give effect to its plain meaning’” (id. at 380

[internal quotation marks omitted], quoting Matter of Albany Law School v New York

State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120 [2012]). The

 -6-
 -7- No. 14

language of the amendment to WCL § 15 (3) (w), which speaks of “continuance of such

permanent partial disability” and “ongoing attachment,” makes clear that it addresses the

period after classification (WCL § 15 [3] [w]). Thus, for this section to relieve a claimant

of the former burden to demonstrate ongoing attachment, the claimant must have been

classified initially as permanently partially disabled and found to be entitled to a loss of

wage earnings compensation award. The Board General Counsel’s interpretation of the

proposed amendment to WCL § 15 (3) (w) lends additional support to our understanding

of the amendment’s purpose (Letter from David F. Wertheim, Workers’ Compensation

Board General Counsel, May 23, 2017, Bill Jacket, L 2017, ch 59 at 29 [“It will be

important for the Board to make labor market attachment determinations at the time of

classification as claimants ‘entitled to benefits’ at that time[] will have no continuing

obligation to show labor market attachment under WCL § 15 (3) (w).”]). Further, the

canon disfavoring interpreting statutes so as to overrule the common law weighs in favor

of retaining the part of the court-imposed rule that requires a claimant to show labor-market

attachment at the time of classification, even though it plainly overrules the part of the rule

requiring ongoing attachment thereafter (see Oden v Chemung County Indus. Dev.

Agency, 87 NY2d 81, 86 [1995] [“(A) statute enacted in derogation of the common law

. . . is to be construed in the narrowest sense that its words and underlying purposes

permit.”]).

 -7-
 -8- No. 14

 III.

 Respondents claim the Board improperly inferred labor market attachment under

Zamora and the WCL in this case. The Board argues that we should not address that issue

on the record before us. According to the Board, its post-Zamora practice has been to infer

continuing labor-market attachment from an involuntary retirement “only when the

employer does not dispute labor-market attachment.” If the employer does challenge the

claimant’s labor-market attachment, the Board says it rejects the inference and demands a

showing of evidence by the claimant that would satisfy the labor-market attachment

requirement without the benefit of the inference, such as, for example, evidence that the

claimant made “efforts to obtain or train for alternate employment,” or that the claimant’s

doctor ordered the claimant not to return to work.

 Here, respondents challenged claimant’s labor-market attachment because claimant

testified at the hearing that since her retirement she had not looked for work, gone back to

school or sought retraining. According to the Board, it implicitly inferred that claimant

remained attached to the labor market. Although it previously defended that decision, the

Board has changed course and now requests that we remand because it did not follow or

explain its departure from its purported administrative precedent that requires claimant to

establish efforts to work or retrain, or provide evidence explaining her failure to do so.

 Given the procedural posture of this appeal—where the Board changed position

after we granted leave and now represents that it departed from its established purported

precedent, and the parties agree on the meaning of WCL § 15 (3) (w) as amended and

 -8-
 -9- No. 14

applied to claimant’s case post-classification—a ruling from us at this juncture would be

limited to these unique facts and to an administrative action that the Board claims is not its

normal practice. Under the circumstances, we conclude the better course is to remit this

matter to the Appellate Division for further remand to the Board. We do not take any

position on this appeal as to whether the Board’s decision below in fact violated a line of

internal administrative precedent, nor whether any such precedent or purported

“evidentiary requirement” comports with the law, including Zamora, as those questions are

not properly before us.

 To be clear, by remitting without deciding whether the Board violated internal

precedent, we do not hold that in another case, an agency’s bare representation that it failed

to follow internal precedent would be grounds for vacatur and remand to the agency.

However, here, remittal will permit the Board to develop a record of its purported precedent

as applied to claimant and clarify its determination whether to draw an inference in

accordance with Zamora’s core holding. It also permits claimant an opportunity to

challenge any adverse decision if she believes, as she now argues, that the Board has

misapplied Zamora or other applicable law.

 The order of the Appellate Division should be reversed, with costs, and the matter

remitted to that court with instructions to remand to the Board for further proceedings in

accordance with this opinion.

 -9-
 - 10 - No. 14

* * * * * * * * * * * * * * * * *
Order reversed, with costs, and matter remitted to the Appellate Division, Third
Department, with directions to remand to the Workers’ Compensation Board for further
proceedings in accordance with the opinion herein. Opinion by Judge Rivera. Chief Judge
DiFiore and Judges Stein, Fahey, Garcia, Wilson and Feinman concur.

Decided March 26, 2020

 - 10 -