■ In the Matter of the Claim of Robert J. Hopkins, Claimant, v Alcas Corporation, Cutco Cutlery, et al., Appellants, and Liberty Mutual Insurance Company, Respondent. Workers' Compensation Board, Respondent. [880 NYS2d 754]—

Peters, J.P. Appeal from a decision of the Workers' Compensation Board, filed February 20, 2008, which, among other things, ruled that Zurich North America is responsible for claimant's workers' compensation benefits.

Claimant was injured at work in June 2003 while pulling a brake lever on a machine. Although he immediately reported the injury to his supervisor, the incident was apparently not documented by the employer. Shortly thereafter, claimant presented to his primary care physician with complaints of shoulder and arm pain, but did not provide a history of the injury. Claimant continued working until January 2004, when the physician with whom he had been treating for continuing pain and numbness ordered him not to return to work. Subsequently, the employer filed three C-2 forms, a C-11 form and a C-240 form and the Workers' Compensation Board issued a notice of indexing, all of which listed a January 2004 date of injury and identified Liberty Mutual Insurance Company as the workers' compensation carrier. Liberty Mutual accepted the claim in March 2004, after which claimant had cervical fusion surgery and was treated by numerous physicians for his continuing pain, all of whom documented either no date of injury or a January 2004 injury date. Claimant was also examined by Liberty Mutual's independent medical examiner, who found a causal relationship for claimant's neck injury, but opined that the fracture in his thoracic spine was not work-related.

At the first hearing, the case was established for claimant's neck injury, Liberty Mutual and the employer raised all issues regarding the thoracic spine, and the case was continued for claimant's testimony. During the next hearing, claimant

explained that his injury occurred in 2003 when he pulled the brake lever on his machine, heard a popping sound and felt an immediate sharp pain between his shoulder blade and spine. He also stated that he had given his employer notice of the injury at the time and that there was no new accident in 2004. Based upon claimant's testimony that the injury actually occurred in 2003, Liberty Mutual contested liability for the accident and requested that Zurich North America, the carrier which provided workers' compensation coverage during 2003, be placed on notice. In response, Zurich controverted coverage and appeared at the next two hearings, where claimant again testified that his injury took place in the summer of 2003 and that his symptoms from the incident progressively worsened until he was forced to cease work in January 2004.

A Workers' Compensation Law Judge (hereinafter WCLJ) ultimately concluded that Liberty Mutual remained the proper carrier and set the date of accident as January 21, 2004. In reaching its determination, the WCLJ found that Liberty Mutual was estopped from denying payment on the claim because it had been paying for two years and had shown no new evidence, and determined that claimant's injury gradually accrued over a reasonably definite period after the 2003 work accident. Upon review, the Workers' Compensation Board reversed, finding that the doctrine of laches did not preclude Liberty Mutual from disputing coverage and there was substantial evidence that claimant's injury occurred in June 2003 during Zurich's period of coverage. This appeal ensued.

Zurich and the employer contend that the Board erred in finding that the doctrine of laches did not bar Liberty Mutual from contesting coverage. "The equitable doctrine of laches can be applied to estop a party from asserting a defense when there has been an inexcusable delay in raising the defense of noncoverage together with actual injury or prejudice" (*Matter of Ricciardi v Johnstown Leather*, 1 AD3d 661, 663 [2003]; *see Matter of Finchum v Colaiacomo*, 55 AD3d 1084, 1085-1086 [2008]). Whether laches should apply depends on the particular facts of each case (*see Matter of Taylor v Vassar Coll.*, 138 AD2d 70, 73 [1988]), and the Board's determination in this regard will be upheld if supported by substantial evidence (*see Matter of Manticoff v American Bldg. Maintenance*, 63 AD3d 1308 [2009] [decided herewith]; *Matter of McGuinness v John P. Picone, Inc.*, 36 AD3d 1032, 1033 [2007]).

Here, we find that Liberty Mutual's delay in contesting coverage was both explained and reasonable. In accepting the claim, Liberty Mutual relied upon the numerous documents it had

received from the employer, the Board and the various medical providers which all set forth a January 2004 date of injury. While a few of the early medical narratives contain language suggesting that the injury may have occurred some time earlier, they also specifically list a January 2004 date of injury, and one such report was never filed with the Board until after claimant testified at the February 2006 hearing. Under these circumstances, particularly with "all documentation in the record supporting a good faith belief on [Liberty Mutual's] part . . . that [January 2004] was the appropriate [injury] date," we cannot conclude that Liberty Mutual's delay in disputing coverage was inexcusable (*Matter of Ricciardi v Johnstown Leather*, 1 AD3d at 663; *compare Matter of Druziak v Town of Amsterdam, Cranesville Fire Dept.*, 209 AD2d 870, 871-872 [1994], *lv denied* 85 NY2d 809 [1995]).

In any event, even assuming an inexcusable delay, we find substantial evidence to support the Board's determination that Zurich failed to demonstrate that it suffered actual prejudice as a result. While Zurich alleges that it was unable to investigate the merits of the claim due to the delay in receiving notice, "[m]ere lapse of time does not establish prejudice" (*Matter of Ricciardi v Johnstown Leather*, 1 AD3d at 663). No evidence was lost or became unavailable to Zurich as a result of the delay, and Zurich offers nothing more than speculation to support its current assertion that there were available defenses to the claim that could have been raised had it been given timely notice (*compare Matter of Finchum v Colaiacomo*, 55 AD3d at 1086-1087). Indeed, after being put on notice of the claim, Zurich appeared at the subsequent hearings, questioned claimant regarding the facts and circumstances of the accident and his medical treatment, and was afforded an opportunity to further develop the record on any potential issue or defense related to the claim (*see Matter of Ricciardi v Johnstown Leather*, 1 AD3d at 663). Zurich, however, neither took advantage of this opportunity nor requested an opportunity to develop the record as to any prejudice that it may have sustained as a result of the delay. As for its allegation that it was prejudiced by the claim handling decisions made by Liberty Mutual, Zurich provides no proof that claimant received any treatment for his neck injury that should not have been authorized and has otherwise failed to identify any alternative course of action that it would have taken had it been put on notice of the claim at an earlier date. Notably, Liberty Mutual continued to dispute the claim for a further causally related injury to the thoracic spine until Zurich was deemed the liable carrier. Since substantial evidence supports the Board's finding that Zurich made an insufficient showing of

actual prejudice resulting from the delay, its decision will not be disturbed (*see Matter of McGuinness v John P. Picone, Inc.*, 36 AD3d at 1033).

Zurich and the employer also assert that Liberty Mutual is the proper carrier because claimant's injury gradually occurred over a period of months. "An accidental injury may result suddenly from the immediate application of some external force or 'accrue gradually over a reasonably definite period of time' " (*Matter of Bruse v Holiday Inn*, 16 AD3d 785, 786 [2005], quoting *Matter of Johannesen v New York City Dept. of Hous. Preserv. & Dev.*, 84 NY2d 129, 136 [1994]; *see Matter of Newton v Sears Roebuck & Co.*, 293 AD2d 862, 863 [2002]). Here, claimant consistently maintained, both in his reports to his various treating physicians and his testimony at the hearings, that when he reached forward to apply a brake lever in the summer of 2003 he heard a "pop" and suffered immediate pain in his shoulder/back area. Although claimant continued to work, he explained that his symptoms from this incident progressively worsened throughout the following months and denied suffering any subsequent, independent injuries during that time. Given the wide latitude afforded to the Board in resolving factual questions such as this (*see e.g. Matter of McDonald v Water Tunnel Contrs.*, 51 AD3d 1151, 1153 [2008]; *Matter of Bruse v Holiday Inn*, 16 AD3d at 787), we are satisfied that substantial evidence supports its determination that the occurrence of claimant's compensable injury was sudden, rather than gradual.

Spain, Rose, Kane and McCarthy, JJ., concur. Ordered that the decision is affirmed, without costs.