■ In the Matter of the Claim of DUOW SACCO, Respondent, v MAST ADVERTISING/PUBLISHING et al., Appellants, et al.; Respondent. WORKERS' COMPENSATION BOARD, Respondent. [896 NYS2d 524]—

Peters, J.P. Appeal from a decision of the Workers' Compensation Board, filed August 28, 2008, which ruled that claimant was totally industrially disabled and amended his average weekly wage.

Claimant worked as a salesperson for the employer from June 1991 to March 3, 1992, when he injured his back after slipping and falling on ice during the course of his employment. In July 1993, his claim for workers' compensation benefits was established and, based upon a C-240 form filed by the employer, his average weekly wage was set at $447.36. Claimant was initially found in March 1996 to have a permanent partial disability and was reclassified in October 2003 with a marked permanent partial disability.

In 2007, claimant sought a finding that he was totally industrially disabled and requested that his average weekly wage be recalculated pursuant to Workers' Compensation Law § 14, arguing that it should have been based on the wages of a similar worker at the time of his injury, rather than his actual wages. The Workers' Compensation Law Judge (hereinafter WCLJ) agreed and directed the employer to submit a C-240 form for a similar worker. In response, the employer indicated that, since it maintained payroll records for only seven years, no such records were available for an employee at the time of claimant's injury. Following a hearing, the WCLJ found claimant to have a total industrial disability and reserved decision on the issue of claimant's average weekly wage. In a decision filed in May 2008, a WCLJ found that the C-240 form filed by the employer in 1992 was "improper on its face," interpreted it in favor of claimant due to the employer's failure to submit a C-240 form reflecting the wages of a similar worker, and modified claimant's average weekly wage to $624 pursuant to Workers' Compensation Law § 14 (3). Upon the employer's appeal, the Workers' Compensation Board upheld both the March 2008 and May 2008 decisions. The employer and its workers' compensation carrier now appeal.

Substantial evidence supports the Board's determination that claimant suffers a total industrial disability. "A claimant who has a permanent partial disability may nonetheless be classified as totally industrially disabled where the limitations imposed by the work-related disability, coupled with other factors, such as limited educational background and work history, render the claimant incapable of gainful employment" (*Matter of Barsuk v Joseph Barsuk, Inc.*, 24 AD3d 1118, 1118 [2005] [citations omitted], *lv dismissed* 6 NY3d 891 [2006], *lv denied* 7 NY3d 708 [2006]; *see Matter of Guan v CPC Home Attendant Program, Inc.*, 50 AD3d 1218, 1219-1220 [2008]). Whether a claimant has such a total industrial disability presents a question of fact for the Board to resolve and its determination will not be disturbed if supported by substantial evidence (*see Matter of Guan v CPC*

*Home Attendant Program, Inc.*, 50 AD3d at 1220; *Matter of Newman v Xerox Corp.*, 48 AD3d 843, 843 [2008]).

Here, claimant testified that he had not worked since 1992, cannot sit, stand or walk for more than 15 minutes at a time, takes pain relief and antianxiety medications that make him drowsy, and has to lie down 16 to 18 hours a day in order to manage his pain. According to the rehabilitation counselor who evaluated claimant on behalf of the Board, these physical limitations, when considered in connection with claimant's employment history, rendered claimant incapable of sustaining gainful employment. Although the employer's vocational rehabilitation counselor expressed a contrary view in her report, her testimony at the hearing was inconclusive as to whether claimant was employable, and the Board was entitled to reject her opinion in favor of that of the Board's vocational rehabilitation counselor (*see Matter of Utley v General Motors Corp.*, 285 AD2d 843, 844 [2001]). Since substantial evidence supports the Board's determination that claimant was totally industrially disabled as a result of his back injury, it will not be disturbed. The employer and carrier's contentions to the contrary mainly involve conflicts in the medical evidence and questions of credibility that were for the Board to resolve (*see Matter of Newman v Xerox Corp.*, 48 AD3d at 844; *Matter of Yanarella v IBM Corp.*, 195 AD2d 620, 621-622 [1993]).

Next addressing the Board's action in modifying claimant's average weekly wage, we reject the employer and carrier's contention that the Board could not modify the 1993 decision establishing claimant's average weekly wage absent an appeal from that decision or an application to reopen. It is clear that the Board maintains continuing jurisdiction over workers' compensation claims and is empowered to "make such modification or change with respect to former findings, awards, decisions or orders relating thereto, as in its opinion may be just" (Workers' Compensation Law § 123; *see Matter of Bey v Aramark Healthcare Support Servs., Inc.*, 26 AD3d 607, 607 [2006], *lv denied* 7 NY3d 702 [2006]; *Matter of Farcasin v PDG, Inc.*, 286 AD2d 840, 840-841 [2001]).

Nor do we conclude that the Board erred in finding that modification of claimant's average weekly wage is not barred by the doctrine of laches. Laches may be applied in the context of a workers' compensation case where there is a "[f]ailure to assert a right for an 'unreasonable and unexplained length of time, accompanied by other circumstances causing prejudice to an adverse party' " (*Matter of Holloway v West St. Trucking*, 14 AD3d 816, 817 [2005], quoting *Matter of Taylor v Vassar Coll.*,

138 AD2d 70, 73 [1988]; *see Matter of McGuinness v John P. Picone, Inc.*, 36 AD3d 1032, 1032 [2007]). Whether the doctrine applies is a question of fact for the Board to resolve and its decision must be upheld if supported by substantial evidence (*see Matter of Hopkins v Alcas Corp., Cutco Cutlery*, 63 AD3d 1342, 1343 [2009]; *Matter of Manticoff v American Bldg. Maintenance*, 63 AD3d 1308, 1309-1310 [2009]).

Here, the 1993 decision setting claimant's average weekly wage was based upon the C-240 form submitted to the Board by the employer, which improperly set forth claimant's wages for the 39 weeks he worked for the employer, rather than the average wage of a similar worker, as was required. A claimant's average daily wage is used in determining his or her annual average wage only when such claimant has worked in the same job for substantially all of the year preceding his or her injury (*see* Workers' Compensation Law § 14 [1]). Where, as here, a claimant did not work in the same job for substantially all of the year preceding his or her injury, such claimant's average annual wage is determined by applying a statutory multiplier to the average daily wage of "an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place" (Workers' Compensation Law § 14 [2]).\* Thus, since claimant did not work for the employer for substantially all of the whole year prior to his injury, his average weekly wage should not have been based upon his actual wages during the 39 weeks of his employment.

The employer and carrier urge, as it did before the Board, that the employer was prejudiced by claimant's delay in seeking modification of his average weekly wage because it was unable to provide the wages of a similar worker. While there can be little dispute that claimant's nearly 15-year delay in seeking modification of his average weekly wage was excessive, it cannot be overlooked that it was the employer, in the first instance, who erroneously failed to set forth the wages of a similar worker. This was notwithstanding the clear and unequivocal directive contained in the C-240 form itself, which instructed the employer to provide the weekly gross earnings of a similar employee where the injured employee did not work for at least 234 days (based on a five-day work week) during the year preceding

---

\* As will be more fully discussed below, if neither of the previous methods can "reasonably and fairly be applied," Workers' Compensation Law § 14 directs that a claimant's average annual wage be computed based on "such sum as . . . shall reasonably represent the annual earning capacity of the injured employee" (Workers' Compensation Law § 14 [3]).

the injury. Clearly, the employer knew or should have known from the outset that claimant's average weekly wage was erroneously set and, in our view, the employer's inability to furnish the payroll records of a similar employee at the time of claimant's injury is due, at least in part, to its own neglect (*cf. Matter of Holloway v West St. Trucking*, 14 AD3d at 817). Moreover, under the particular circumstances of this case, we fail to find any real prejudice flowing from the employer's inability to provide the wages of a similar worker. To that end, this Court has held that Workers' Compensation Law § 14 (2) was not intended to be employed "in the case of salesmen whose income is largely dependent upon commissions," reasoning that "the income of one individual from commissions offers no accurate method of determining the income of another, and does not reasonably represent the annual earning capacity of an injured employee" (*Matter of Delmonte v Sears, Roebuck & Co.*, 12 AD2d 548, 548 [1960]). Under such circumstances, we concluded that "neither of the methods provided for in subdivision[s] 1 and 2 [of Workers' Compensation Law § 14] can fairly and reasonably be applied, and all of the factors provided for in subdivision 3 should be given consideration, including the actual earnings of claimant, in arriving at a figure which shall reasonably represent the annual earning capacity of the injured employee" (*id.* at 549 [internal quotation marks and citations omitted]). For these reasons, we find that the Board's refusal to invoke the doctrine of laches to bar claimant from seeking modification of his average weekly wage is supported by substantial evidence and, as such, will not be disturbed (*see Matter of Manticoff v American Bldg. Maintenance*, 63 AD3d at 1310; *Matter of Holloway v West St. Trucking*, 14 AD3d at 817).

As for the merits of the Board's modification, substantial evidence supports its finding that claimant's annual earning capacity is most accurately determined by averaging his earnings from the last 10 weeks of employment. Workers' Compensation Law § 14 (3) directs that, where neither of the methods set forth in subdivisions (1) and (2) can "reasonably and fairly be applied," a claimant's average weekly wage must be computed based on "such sum as . . . shall reasonably represent the annual earning capacity of the injured employee in the employment in which he [or she] was working at the time of [his or her] accident." Here, the WCLJ implicitly accepted claimant's argument that his earnings in the last 10 weeks of employment would most accurately reflect his earning capacity at the time of the accident, since he was a new employee and did not receive commissions in his first several weeks of employment. However, in so doing, the WCLJ incorrectly utilized claimant's earnings

during his last 11 weeks of employment and divided that sum by 10, and thus we modify by basing claimant's average weekly wage on his last 10 weeks of employment, resulting in an average weekly wage of $592.23.

We have examined the employer and carrier's remaining contentions and find them to be lacking in merit.

Spain, Lahtinen, Stein and Garry, JJ., concur. Ordered that the decision is modified, without costs, by reversing so much thereof as amended claimant's average weekly wage to $624; claimant's average weekly wage is set at $592.23; and, as so modified, affirmed.