■ In the Matter of the Claim of SEMSIYE KUCUK, Appellant, v HICKEY FREEMAN COMPANY, INC., et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [909 NYS2d 831]—

Peters, J.P. Appeal from a decision of the Workers' Compensation Board, filed January 27, 2009, which, among other things, ruled that claimant did not sustain a total industrial disability.

Claimant, a seamstress, immigrated from Turkey in 1979 and began working for the employer. Her job involved repetitive handwork, including knitting collars, sewing, cutting fabric and using a sewing machine. In 1990, she sustained injuries to her right thumb and wrist in the course of her employment and received workers' compensation benefits. Claimant missed a few weeks of work as a result of her injuries but, following her return, continued with the repetitive handwork despite ongoing

problems with her hands, wrists, thumbs and elbows, as well as pain in her arms and shoulders. In 2004, she sustained work-related injuries to her right arm and shoulder and stopped working upon the recommendation of her orthopedic surgeon. Her claim for workers' compensation benefits was established with respect to this injury and she was awarded benefits through November 6, 2004, and liability for the 1990 claim was transferred to the Special Fund for Reopened Cases (*see* Workers' Compensation Law § 25-a).

Thereafter, various hearings were conducted wherein extensive medical testimony was presented regarding claimant's level of disability and her abilities. During the course of the proceedings, video surveillance was taken of claimant on six separate days between September 2005 and February 2006. After viewing the surveillance footage, each of the three examining physicians testified and/or issued amendments to their medical reports downgrading their opinions of claimant's disability.

In December 2007, the Workers' Compensation Board found that claimant had a causally related disability of a mild to moderate degree and amended her 2004 claim to include certain other conditions, but held awards in abeyance pending a determination on the issue of voluntary withdrawal from the labor market. It also directed further development of the record on the issues of, among other things, permanency and total industrial disability. Following a hearing wherein claimant testified, a Workers' Compensation Law Judge (hereinafter WCLJ) found that claimant suffered a permanent partial disability, but was not entitled to further benefits because she did not maintain an attachment to the labor market. In a decision filed in January 2009, the Board affirmed the WCLJ's determination, finding that claimant does not have a total industrial disability and that she voluntarily withdrew from the labor market by failing to search for work within her medical restrictions. The Board subsequently issued an amended decision, resulting in the same conclusion, and denied claimant's application for full Board review. Claimant now appeals.[1]

Substantial evidence supports the Board's determination that claimant does not have a total industrial disability. "A claimant

---

1. Although claimant only filed a notice of appeal from the Board's January 2009 decision, inasmuch as the amended decision is substantially the same as that decision and there has been no claim of prejudice, we will exercise our discretion to overlook this error and treat this as a valid appeal from the amended decision (*see* CPLR 5520 [c]; *Matter of Church v Arrow Elec., Inc.*, 69 AD3d 983, 984 n 2 [2010]; *Matter of Barker v Buffalo Color Corp.*, 32 AD3d 1138, 1139 [2006]).

who suffers from a permanent partial disability may be classified as totally industrially disabled if the limitations imposed by the compensable injury, coupled with factors such as a limited educational background and work history, render him or her incapable of gainful employment" (*Matter of Wooding v Nestle USA, Inc.*, 75 AD3d 1043, 1043 [2010] [citation omitted]; *see Matter of Newman v Xerox Corp.*, 48 AD3d 843, 843 [2008]). Whether a total industrial disability exists presents a question of fact for the Board to resolve and its determination will be upheld if supported by substantial evidence (*see Matter of Sacco v Mast Adv./Publ.*, 71 AD3d 1304, 1305 [2010]; *Matter of Barsuk v Joseph Barsuk, Inc.*, 24 AD3d 1118, 1118 [2005], *lv dismissed* 6 NY3d 891 [2006], *lv denied* 7 NY3d 708 [2006]).

Here, after viewing the video surveillance footage, two of claimant's examining doctors opined that, while claimant was unable to return to her previous job with the employer or perform the type of repetitive work that she did while working there, she was capable of performing light, nonrepetitive work with a five-pound weight restriction. The physician who examined claimant on behalf of the Board agreed that claimant's disability prevented her from doing work that involved repetitive movements, but otherwise listed claimant's work restrictions as heavy pushing or pulling and lifting more than 40 pounds. While Jennifer Dizon, the rehabilitation counselor who evaluated claimant on behalf of the Board, opined that claimant was not a viable candidate for job retraining, the Board is entitled to reject an opinion as incredible where, as here, the assumptions forming the basis of that opinion lack evidentiary support in the record (*see generally Matter of Albert v Miracle Makers of Bedford Stuyvesant HFDC, Inc.*, 13 AD3d 925, 926 [2004]; *Matter of Musa v Nassau County Police Dept.*, 276 AD2d 851, 852 [2000]; *Matter of Freitag v New York Times*, 260 AD2d 748, 749 [1999]). Dizon's opinion was based, in part, upon the finding of one of claimant's examining physicians that claimant had a total disability, but the Board had previously rejected that finding and, more significantly, the physician had changed his opinion following his review of the video surveillance of claimant. Furthermore, as noted by the Board, Dizon's finding that claimant "cannot hold grocery bags or even a gallon of milk" was utterly belied by the video surveillance—which Dizon did not review—showing claimant performing these tasks, as well as various other activities involving her upper extremities. Although claimant has a limited ability to speak English and has been a seamstress for over 25 years, the record reveals that she failed to participate in free English classes provided by the employer and was resistant to job retraining, raising the infer-

ence that claimant was unwilling to perform other work as opposed to being unable to do so (*see Matter of Mastan v Nashua Tape Prods.*, 219 AD2d 766, 767 [1995]). Thus, we find the Board's determination that claimant was not totally industrially disabled to be supported by substantial evidence (*see Matter of Wooding v Nestle USA, Inc.*, 75 AD3d at 1044; *Matter of Gaff v North Star Trucking*, 242 AD2d 758 [1997], *lv denied* 91 NY2d 803 [1997]; *Matter of Mastan v Nashua Tape Prods.*, 219 AD2d at 766).

We next address the Board's finding that claimant's withdrawal from the labor market was voluntary. "An award of compensation is improper if the sole cause for a claimant's loss of earnings is his or her voluntary withdrawal from the labor market" (*Matter of Louman v Premier Staffing, LLC*, 12 AD3d 815, 815 [2004] [internal quotation marks and citation omitted]; *see Matter of Yamonaco v Union Carbide Corp.*, 42 AD2d 1014, 1014 [1973]; *see also Burns v Varriale*, 34 AD3d 59, 63 [2006], *affd* 9 NY3d 207 [2007]). Whether a claimant has voluntarily withdrawn from the labor market is a factual question for the Board to resolve and its determination will not be disturbed if supported by substantial evidence (*see Matter of Mills v J.C. Penney*, 59 AD3d 755, 756 [2009]; *Matter of Sanchez v Consolidated Edison Co. of N.Y., Inc.*, 40 AD3d 1153, 1154 [2007]). To that end, "the Board is vested with broad authority to decide factual issues based upon the credibility of witnesses and to draw reasonable inferences therefrom" (*Matter of Mills v J.C. Penney*, 59 AD3d at 756; *see Matter of Laing v Maryhaven Ctr. of Hope*, 39 AD3d 1125, 1126 [2007], *lv denied* 9 NY3d 805 [2007]).

As previously stated, all of the medical evidence indicated that claimant was capable of working in a sedentary job or light duty job, albeit not involving repetitive handwork. Claimant testified that she asked the employer for nonrepetitive work shortly after her 2004 injuries, but was informed that such a position was not available. When questioned about her job search, claimant could only identify three places of employment that she had applied to during the more than three-year period from when she left the employer in 2004 to January 2008.[2] Although she testified that she looked for work at other places, the Board was free to discount her testimony in this regard, particularly in light of the fact that she was unable to identify those jobs or the dates that she searched for such work (*see Matter of Mills v J.C. Penney*, 59 AD3d at 756). Given the

---

2. In fact, claimant's attorney conceded at a May 2006 hearing that claimant had not looked for work since the time she left her employment.

minimal nature of claimant's attempts to find a job within her medical restrictions, and the absence of any evidence that her inability to obtain employment was caused by or related to her permanent partial disability, the Board's determination that claimant failed to maintain an attachment to the labor market is supported by substantial evidence (*see Matter of Rothe v United Med. Assoc.*, 18 AD3d 1093, 1094 [2005]; *Matter of Laing v Maryhaven Ctr. of Hope*, 39 AD3d at 1126; *Matter of Louman v Premier Staffing, LLC*, 12 AD3d at 816; *Matter of Campbell v AC Rochester Prods., Div. of Gen. Motors Corp.*, 268 AD2d 711, 711-712 [2000]).

Nor did the Board apply an incorrect legal standard in suspending claimant's benefits. "[O]ur cases dealing with the issue of whether the failure to look for work constitutes a withdrawal from the labor market subsequent to an involuntary retirement are inapplicable where, as here, the Board has not previously determined the issue of whether a claimant with a permanent partial disability has withdrawn from the labor market" (*Matter of Sanchez v Consolidated Edison Co. of N.Y., Inc.*, 40 AD3d at 1154; *compare Matter of Pepe v City & Suburban*, 29 AD3d 1184 [2006]; *Matter of Tipping v National Surface Cleaning Mgt., Inc.*, 29 AD3d 1200, 1200 [2006]). Rather, "[t]he threshold issue to be determined by the Board is whether claimant's permanent partial disability caused or contributed to her loss of wages. At that step of the analysis, the failure to look for work is a relevant factor to be considered" (*Matter of Laing v Maryhaven Ctr. of Hope*, 39 AD3d at 1126; *see e.g. Matter of Louman v Premier Staffing, LLC*, 12 AD3d at 816; *Matter of Scarpelli v Bevco Trucking Corp.*, 305 AD2d 892, 893 [2003]). Here, because claimant's withdrawal was found to be voluntary at the first step of the analysis, the Board was not required to proceed any further (*see Matter of Laing v Maryhaven Ctr. of Hope*, 39 AD3d at 1126).

Rose, Lahtinen, McCarthy and Garry, JJ., concur. Ordered that the decision is affirmed, without costs.