### State of New York
### Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  November 17, 2016          522267
_____

In the Matter of the Claim of
    VINCENT PRAVATO,
                    Appellant,

        v

TOWN OF HUNTINGTON et al.,                MEMORANDUM AND ORDER
                    Respondents.

WORKERS' COMPENSATION BOARD,
                    Respondent.
_____


Calendar Date:  October 13, 2016

Before:  Garry, J.P., Egan Jr., Rose, Devine and Mulvey, JJ.


_____


        Turley Redmond Rosasco & Rosasco, LLP, Ronkonkoma (John F.
Clennan of counsel), for appellant.

        Jones Jones, LLC, New York City (Katherine Caracappa of
counsel), for Town of Huntington and another, respondents.


_____


Rose, J.

        Appeal from a decision of the Workers' Compensation Board,
filed November 4, 2015, which ruled, among other things, that
claimant sustained a permanent partial disability and a 40% loss
of wage-earning capacity.

        Claimant worked for the Town of Huntington for
approximately 32 years, initially as a laborer and later as
sanitation truck driver.  On January 3, 2011, he injured his back
while emptying a garbage can into the hopper of a sanitation
truck.  His claim for workers' compensation benefits was

thereafter established for accident, notice and causal relationship for an injury to his back. Although claimant returned to work briefly following his injury, he remained out of work from January 10, 2011 until January 2, 2012. He returned to work on January 3, 2012 and continued working until May 18, 2012 when he resigned from his position at the age of 57.

Following hearings in July 2012 and October 2012, claimant was awarded temporary total disability benefits for various time periods, including those that postdated his resignation. The Workers' Compensation Board upheld these awards, finding that claimant's disability contributed to his decision to resign and that the awards for temporary total disability were properly made. The employer's application for full Board review was denied.

In January 2015, a permanency hearing was conducted and a Workers' Compensation Law Judge (hereinafter WCLJ), among other things, classified claimant with a permanent partial disability (see Workers' Compensation Law § 15 [3] [w]), found that he had a loss of wage-earning capacity of 70% and was attached to the labor market, and made awards accordingly. On appeal, a panel of the Workers' Compensation Board determined that claimant was capable of performing sedentary work and had a loss of wage-earning capacity of only 40%.[1] The Board further found that claimant was not attached to the labor market at the time of the classification. Consequently, the Board modified the WCLJ's awards. Claimant now appeals.

Claimant argues, among other things, that the medical evidence does not support the Board's finding that he is capable of performing sedentary work and that this unduly impacted its assessment of his loss of wage-earning capacity, leading it to conclude that the loss was only 40%. Upon reviewing the record before us, we must agree. It is well settled that, in determining a claimant's "loss of wage-earning capacity" for

---

[1] The Board panel also found that claimant had a wage-earning capacity of 60% (see Workers' Compensation Law § 15 [5-a]).

purposes of establishing the duration of permanent partial disability benefits not amenable to a schedule award (Workers' Compensation Law § 15 [3] [w]), "[t]he Board relies upon various factors . . ., including the nature and degree of the work-related permanent physical and/or mental impairment, work restrictions, [and the] claimant's age" (Matter of Wormley v Rochester City Sch. Dist., 126 AD3d 1257, 1258 [2015] [internal quotation marks and citations omitted]; see Canales v Pinnacle Foods Group. LLC, 117 AD3d 1271, 1273 [2014]; Matter of Cameron v Crooked Lake House, 106 AD3d 1416, 1416 [2013], lv denied 22 NY3d 852 [2013]).

Here, there was no medical testimony presented at the hearing concerning the permanency of claimant's impairment or the extent of his physical limitations. Rather, the only medical evidence presented was the reports of Thomas Dowling, claimant's treating orthopedist, and Robert Moriarty, the orthopedist who conducted an independent medical examination. Both of these physicians categorized claimant as having a class C condition of the lumbar spine with a severity rating of B under the applicable guidelines (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 120 [2012]). Dowling outlined claimant's many physical limitations, particularly with regard to lifting, pulling, sitting, standing, walking, driving a motor vehicle and operating machinery. In his detailed report, he opined that claimant's exertional ability was such that he could not perform his prior work activities with restrictions and was unable to perform even sedentary work. Moriarty acknowledged the limitations in claimant's ability to lift and push or pull more than 25 pounds, as well as his inability to sit or stand for prolonged periods of time. Unlike Dowling, however, he did not provide an opinion on claimant's exertional ability or specify the type of work that claimant could perform, be it sedentary or otherwise, other than stating in a conclusory fashion that claimant could work in a "modified duty capacity."

The WCLJ clearly credited Dowling's opinion that claimant was incapable of performing even sedentary work in determining, after also considering claimant's age, limited vocational skills and high school education, that he had a 70% loss of wage-earning

capacity. There is, however, a lack of competent medical evidence in the record to support the Board's contrary finding that claimant could, in fact, perform sedentary work. Inasmuch as this was one of the factors considered by the Board in determining that claimant had a 40% loss of wage-earning capacity (see Workers' Compensation Law § 15 [3] [w]), substantial evidence does not support its decision in this regard.[2] Contrary to the employer's claim, this is not a case in which the Board simply chose to credit a conflicting medical opinion (compare Matter of Roman v Manhattan & Bronx Surface Tr. Operating Auth., 139 AD3d 1304, 1305 [2016]).

Claimant also contends that the Board erred in concluding that he was not attached to the labor market as of January 15, 2015 when he was classified as permanently partially disabled. We note that labor market attachment is a factual issue for the Board to resolve and its determination in this regard will be upheld if supported by substantial evidence (see Matter of Zamora v New York Neurologic Assoc., 19 NY3d 186, 192-193 [2012]; Matter of Rothe v United Med. Assoc., 18 AD3d 1093, 1094 [2005]). Notably, it is incumbent upon a claimant to demonstrate "attachment to the labor market with evidence of a search for employment within medical restrictions" (Matter of Cole v Consolidated Edison Co. of N.Y. Inc., 125 AD3d 1084, 1085 [2015]; see Matter of Winters v Advance Auto Parts, 119 AD3d 1041, 1042 [2014]; Matter of Bobbitt v Peter Charbonneau Constr., 85 AD3d 1351, 1351 [2011]).

Claimant testified at the January 2015 hearing that, for the past 1½ to 2 years, he attempted to find work through the Department of Labor's One Stop Career Center (hereinafter One Stop), which he last visited about 2½ to 3 weeks before the hearing. He indicated that he took classes on preparing a resume, used the computer to search for jobs and contacted prospective employers by telephone, but did not have any success

_____

[2] To the extent that the same factor was considered by the Board in determining that claimant had a wage-earning capacity of 60%, this part of its decision is also not supported by substantial evidence.

due to his physical restrictions.  He admitted that, since October 2014, he had not submitted any job applications, had not gone on any job interviews and had made only one visit to One Stop for about an hour and a half.  He stated that he had submitted a total of 10 job applications, all for driving positions, from the time that he resigned from his job. Furthermore, claimant related that there were a few occasions when prospective employers contacted him with regard to his applications, but he failed to elaborate or provide specific details.  In view of the foregoing, there is little to suggest that claimant searched for suitable employment that was consistent with his medical restrictions during the time that he participated in the job search at One Stop.  Furthermore, by his own testimony, it does not appear that he was diligently engaged in an active search for employment through One Stop at the time of the January 2015 hearing (see e.g. Employer: American Axle, 2010 WL 438153, *4-5, 2010 NY Work Comp LEXIS 2560, *12 [WCB No. 8030 3659, Feb. 4, 2010]).  Accordingly, we conclude that substantial evidence supports the Board's finding that claimant was not attached to the labor market as of January 15, 2015 (see Matter of Rothe v United Med. Assoc., 18 AD3d at 1094; compare Matter of Cole v Consolidated Edison Co. of N.Y. Inc., 125 AD3d at 1085).  We have considered claimant's remaining arguments and find them to be unavailing.

Garry, J.P., Egan Jr., Devine and Mulvey, JJ., concur.

ORDERED that the decision is modified, without costs, by reversing so much thereof as determined that claimant sustained a 40% loss of wage-earning capacity and had a wage-earning capacity of 60%; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court