Rose, J.
 

 Appeal from a decision of the Workers’ Compensation Board, filed April 7, 2016, which ruled, among other things, that claimant sustained a 60% loss of wage-earning capacity.
 

 Claimant, a 58-year-old male who was born in the Ukraine and has limited proficiency in the English language, moved to the United States in 1997 and began working as an asbestos handler. In November 2009, he was injured while working on a roof when he was struck by a piece of plywood, causing him to fall and lose consciousness. He filed a claim for workers’ compensation benefits and his case was established for injuries to his left arm, left hand, left hip, back and face and, subsequently, for major depression as well as injuries to his head, neck, right leg, left thigh and right hand. Claimant was awarded benefits for partial disability and further proceedings were conducted to ascertain the permanency of his injuries and the extent to which they impacted his functional ability and, concomitantly, his loss of wage-earning capacity. Following the submission of medical reports and testimony from a number of physicians, as well as claimant’s testimony, a Workers’ Compensation Law Judge (hereinafter WCLJ) classified claimant as having a nonschedule permanent partial disability, concluded that he could perform light work and assessed his loss of wage-earning capacity at 60%. A panel of the Workers’ Compensation Board upheld the WCLJ’s decision, and claimant now appeals.
 

 Claimant contends that the WCLJ’s conclusion that he is capable of performing light work, which was adopted by the Board and directly affected the assessment of a 60% loss of wage-earning capacity, is not supported by substantial evidence. Given the absence of any medical evidence in the record establishing that claimant is capable of performing light work, we must agree. Preliminarily, chapter 9 of the 2012 New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity (hereinafter the 2012 Guidelines) sets forth the manner for determining the loss of wage-earning capacity for a claimant with a nonschedule permanent partial disability and provides that it is based on three types of input, namely, medical impairment, functional ability/loss and non-medical vocational factors (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 44 [2012]). The first two inputs are medical in nature, while the third is non-medical and concerns matters such as a claimant’s education, skill, age and literacy (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 44 [2012]).
 

 With respect to the medical inputs, the 2012 Guidelines direct that a treating physician perform an impairment and functional assessment when a claimant has reached maximum medical improvement (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 44 [2012]). The functional assessment includes an evaluation of a claimant’s exertional ability related to activities requiring lifting and/or pushing or pulling objects, and is rated from a minimal level of “sedentary” to a maximum level of “very heavy” (see New York Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 44-46 [2012]; see also Matter of Burgos v City wide Cent. Ins. Program, 148 AD3d 1493, 1494 [2017]). Once the medical and non-medical evidence has been received, “[t]he Board must establish [a loss of wage-earning capacity] based on the facts in the case” (New York Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 47 [2012]). Notably, this “inquiry seeks to quantify how much earning power an injured worker has lost in light of his or her medical impairment, functional limitations, prior work history, education, skills, and aptitudes” (New York Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 47 [2012]).
 

 Here, none of the physicians who treated claimant’s physical injuries rated him as having the functional ability to perform light work. To the contrary, they rated him as being able to perform less than sedentary work or sedentary work.
 
 *
 
 The WCLJ, who was not a medical doctor, appears to have undertaken his own independent analysis of the medical evidence in concluding that claimant was capable of performing light work. Inasmuch as this was a significant factor that was considered in determining claimant’s loss of wage-earning capacity, the WCLJ’s finding that claimant sustained a 60% loss of wage-earning capacity, adopted by the Board, is not supported by substantial evidence in the record (see Matter of Pravato v Town of Huntington, 144 AD3d 1354, 1355-1356 [2016]; compare Matter of Curcio v Sherwood 370 Mgt. LLC, 147 AD3d 1186, 1187-1188 [2017]). Accordingly, the matter must be remitted for further proceedings to ascertain claimant’s loss of wage-earning capacity in accordance with the 2012 Guidelines.
 

 Given that we are remitting the matter, we also address claimant’s assertion that the WCLJ was required to make a preliminary finding with respect to the degree of his permanent medical impairment before further developing the record to consider non-medical vocational factors. We note that the 2012 Guidelines do not impose such a requirement and that this Court has not found it to be necessary (see Matter of Drake v SRC, Inc., 148 AD3d 1412, 1413 [2017]). Furthermore, although claimant maintains that the WCLJ refused to consider the report of his vocational rehabilitation specialist, the record suggests that the WCLJ did consider this report, but declined to give it any weight. The report was relevant to the non-medical vocational factors to be evaluated in determining claimant’s loss of wage-earning capacity. Accordingly, to the extent that the report is in need of updating, claimant should be permitted to submit an amended report for the WCLJ’s consideration upon remittal.
 

 McCarthy, J.P., Garry, Devine and Clark, JJ., concur.
 

 Ordered that the decision is modified, without costs, by reversing so much thereof as found that claimant is capable of performing light work and assessed a 60% loss of wage-earning capacity; matter remitted to the Workers’ Compensation Board for further proceedings not inconsistent with this Court’s decision; and, as so modified, affirmed.
 

 *
 

 The psychiatrists who treated claimant for depression and psychological problems did not specifically rate the level of claimant’s functional ability, but did indicate that he was unable to perform the duties of his former job or undertake safety sensitive or environmentally stressful tasks.