Peters, P.J.
 

 Cross appeal from a decision of the Workers’ Compensation Board, filed August 19, 2016, which ruled, among other things, that claimant sustained a permanent partial disability and a 50% loss of wage-earning capacity.
 

 Claimant worked as a truck driver and was injured in April 2013 while shoveling mud out of his dump truck. He filed a claim for workers’ compensation benefits and his claim was established for injuries to his neck and back. In November 2013, claimant was voluntarily laid off from his job and a panel of the Workers’ Compensation Board ruled that he voluntarily withdrew from the labor market. Thereafter, further proceedings were conducted before a Workers’ Compensation Law Judge (hereinafter WCLJ) concerning claimant’s reattachment to the labor market following his layoff and the extent of his loss of wage-earning capacity. Following additional hearings, the WCLJ concluded that claimant had reattached to the labor market effective March 21, 2014 and awarded him benefits at the rate of $445.15 per week for the period of March 21, 2014 through May 10, 2016. The WCLJ further found that claimant had a permanent partial disability due to the condition of his lumbar spine and a loss of wage-earning capacity of 81%. On administrative review, a panel of the Board disagreed with the WCLJ’s finding that claimant had demonstrated his reattachment to the labor market, and it rescinded the awards related thereto. In addition, the Board found that claimant had a permanent partial disability related to the condition of his cervical and lumbar spine classified as a class 3 impairment with a severity rating of B under table 11.1 of the 2012 New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity (hereinafter the guidelines), but concluded that claimant’s loss of wage-earning capacity was 50%. Claimant appeals and the employer and its workers’ compensation carrier (hereinafter collectively referred to as the employer) cross-appeal from this decision.
 

 Initially, whether a claimant has demonstrated an attachment to the labor market is a factual issue for the Board, and its decision in this regard will be upheld if supported by substantial evidence (see Matter of Villalobos v RNC Indus. LLC, 151 AD3d 1156, 1157 [2017]; Matter of Pravato v Town of Huntington, 144 AD3d 1354, 1356 [2016]). Significantly, “[t]he Board has found that a claimant remains attached to the labor market when he or she is actively participating in a job location service, a job retraining program or a Board-approved rehabilitation program, or where there is credible documentary evidence that he or she is actively seeking work within his or her medical restrictions through a timely, diligent and persistent independent job search” (Matter of Palmer v Champlain Val. Specialty, 149 AD3d 1342, 1342 [2017]; see Matter of Winters v Advance Auto Parts, 119 AD3d 1041, 1042-1043 [2014]; Employer: American Axle [Carrier: American Protection Ins. Co.], 2010 WL 438153, *4-5, 2010 NY Wrk Comp LEXIS 2560, *12 [Case No. 8030 3659, Feb. 4, 2010]).
 

 Here, the record reveals that claimant contacted the Office of Adult Career and Continuing Education Services-Vocational Rehabilitation (hereinafter ACCES-VR) and the Office of Workforce Development in March 2014 and April 2014, respectively, to inquire about job assistance services. He visited these agencies periodically through October 2014, during which time he met with counselors, obtained job search advice, signed up for a workshop, had his resume prepared and searched for jobs online. The Workforce Development counselor advised claimant that he needed to obtain his high school equivalency diploma and the ACCES-VR counselor helped him devise an individualized plan for employment identifying his work goal as obtaining a job as a customer service representative by December 31, 2015.
 

 In January 2015, claimant began receiving Social Security disability benefits. He took a preparatory test for the high school equivalency examination in September 2015, but was deemed not ready. Later that month, he began attending classes twice a week, three hours per day, to prepare for the high school equivalency examination, and he continued taking these classes through April 2016. However, as of the date of the final hearing before the WCLJ on the issues of labor market reattachment and loss of wage-earning capacity, claimant had not yet taken the examination. Moreover, at the hearing, claimant testified that he did not pursue the work goal of becoming a customer service representative because he did not have sufficient education and admitted that he had not done anything with his resume or identified any potential job leads through his online search. Furthermore, claimant could not describe the specific type of jobs that he wished to find through his search or his plan to obtain employment upon obtaining his high school equivalency diploma.
 

 The foregoing demonstrates that although claimant initially explored other possible employment opportunities through his contact with ACCES-VR and Workforce Development, his efforts waned thereafter, particularly once he began receiving Social Security disability benefits, and he never made a concerted effort to identify and pursue potential jobs that were consistent with his skills and/or limitations. Notably, after claimant began taking classes for his high school equivalency diploma, his job search efforts subsided significantly. Under these circumstances, the Board could reasonably find that claimant did not actively participate in programs to secure alternative employment and, therefore, substantial evidence supports its conclusion that he did not demonstrate his reattachment to the labor market (see Matter of Palmer v Champlain Val. Specialty, 149 AD3d at 1343-1344; Matter of Pravato v Town of Huntington, 144 AD3d at 1356-1357; Matter of Walker v Darcon Constr. Co., 142 AD3d 740, 741-742 [2016]; compare Matter of Cruz v Buffalo Bd. of Educ., 138 AD3d 1316, 1317-1318 [2016]).
 

 Turning to the Board’s finding with respect to claimant’s loss of wage-earning capacity, chapter 9 of the guidelines sets forth the method for ascertaining the loss of wage-earning capacity for a claimant with a nonschedule permanent partial disability (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 44 [2012]). Such a determination is “based on three types of input, namely, medical impairment, functional ability/loss and non-medical vocational factors,” such as age, education, literacy and skills (Matter of Golovashchenko v Asar Intl. Corp., 153 AD3d 1475, 1476 [2017]; see Workers’ Compensation Law § 15 [3] [w]; Matter of Villalobos v RNC Indus. LLC, 151 AD3d at 1158; Matter of Drake v SRC, Inc., 148 AD3d 1412, 1413 [2017]). The first two inputs are medical in nature while the third is nonmedical (see Matter of Golovashchenko v Asar Intl. Corp., 153 AD3d at 1476; New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 44-46 [2012]).
 

 Here, there was no medical testimony presented at the hearings regarding claimant’s medical impairment or functional ability/loss attributable to the condition of his cervical and lumbar spine. Although both claimant’s treating physician and the orthopedic surgeon who conducted an independent medical examination of claimant submitted reports categorizing claimant’s impairment as class 3, with a severity rating of B, under table 11.1 of the guidelines, no information was provided as to the manner in which this affected his ability to perform relevant physical tasks (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 9.2 at 44-46 [2012]). In one report prepared by claimant’s treating physician, he imposed a 15-pound lifting restriction, but no further limitations were imposed nor were any other details provided as to how this impacted claimant’s functional capabilities. In the absence of competent medical evidence concerning the medical inputs that must be considered in determining a claimant’s loss of wage-earning capacity, we conclude that substantial evidence does not support the Board’s finding that claimant had a 50% loss of wage-earning capacity (see Matter of Pravato v Town of Huntington, 144 AD3d at 1355; compare Matter of Smith v New York City Hous. Auth., 147 AD3d 1184, 1185 [2017]; Matter of Martone v Niagara Frontier Transp. Auth.-Metro, 146 AD3d 1191, 1192 [2017]).
 

 Garry, Clark, Aarons and Pritzker, JJ., concur.
 

 Ordered that the decision is modified, without costs, by reversing so much thereof as found that claimant sustained a 50% loss of wage-earning capacity; matter remitted to the Workers’ Compensation Board for further proceedings not inconsistent with this Court’s decision; and, as so modified, affirmed.