Matter of Bloomingdale v Reale Constr. Co. Inc. (2018 NY Slip Op 03575)





Matter of Bloomingdale v Reale Constr. Co. Inc.


2018 NY Slip Op 03575


Decided on May 17, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 17, 2018

524528

[*1]In the Matter of the Claim of SCOTT BLOOMINGDALE, Appellant,
v
REALE CONSTRUCTION CO. INC. et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. (And Another Related Proceeding.)

Calendar Date: April 25, 2018

Before: Garry, P.J., Lynch, Clark, Aarons and Rumsey, JJ.


Law Firm of Alex C. Dell, PLLC, Albany (Mindy E. McDermott of counsel), for appellant.
Walsh & Hacker, Albany (Sean F. Nicolette of counsel), for Reale Construction Co. Inc. and another, respondents.
Stephen M. Licht, Special Funds Conservation Committee, New York City (Jill B. Singer of counsel), for Special Fund for Reopened Cases, respondent.


Garry, P.J.

MEMORANDUM AND ORDER
Appeal from a decision of the Workers' Compensation Board, filed April 22, 2016, which ruled, among other things, that claimant sustained a 33% loss of wage-earning capacity.

In 1992, claimant, a heavy equipment operator working for Micheli Corporation sustained a work-related injury to his lower back and was ultimately classified with a nonschedule permanent partial disability. By a decision of a Workers' Compensation Law Judge (hereinafter WCLJ), filed July 8, 2011, the Special Fund for Reopened Cases assumed liability for the claim pursuant to Workers' Compensation Law § 25-a. In September 2011, while working for Reale Construction Co. Inc. as an operating engineer, claimant sustained work-related injuries when he fell off an excavator. His claim for workers' compensation benefits was thereafter established for injuries to his neck and back and, in 2014, amended to include postconcussion syndrome. During subsequent hearings, Reale Construction and its workers' [*2]compensation carrier (hereinafter collectively referred to as the employer) raised, among other things, the issue of claimant's attachment to the labor market [FN1]. In a November 2015 notice of decision, a WCLJ classified claimant with a nonschedule permanent partial disability related to the condition of his cervical and lumbar spine (soft tissue) categorized as a class 3 impairment with a severity ranking of B and postconcussion syndrome (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at table 11.1 [2012] [hereinafter the guidelines]). The WCLJ further determined that claimant had a 33% loss of wage-earning capacity but suspended awards based upon his finding that claimant was not attached to the labor market. Upon administrative appeal, the Workers' Compensation Board, in relevant part, affirmed [FN2]. Claimant appeals.
Initially, in light of the Board's determination as to claimant's degree of disability and loss of wage-earning capacity, it was, contrary to claimant's contention, entirely proper for the Board to consider whether claimant remained attached to the labor market (see Matter of Wolfe v Ames Dept Store, Inc., 159 AD3d 1291, 1293 [2018]; Matter of McKinney v United States Roofing Corp., 150 AD3d 1377, 1378 [2017]). "[W]hether a claimant has demonstrated an attachment to the labor market is a factual issue for the Board, and its decision in this regard will be upheld if supported by substantial evidence" (Matter of King v Riccelli Enters., 156 AD3d 1095, 1096 [2017]; see Matter of Villalobos v RNC Indus. LLC, 151 AD3d 1156, 1157 [2017]; Matter of Pravato v Town of Huntington, 144 AD3d 1354, 1356 [2016]). "Significantly, the Board has found that a claimant remains attached to the labor market when he or she is actively participating in a job location service, a job retraining program or a Board-approved rehabilitation program, or where there is credible documentary evidence that he or she is actively seeking work within his or her medical restrictions through a timely, diligent and persistent independent job search" (Matter of King v Riccelli Enters., 156 AD3d at 1096-1097 [internal quotation marks, citations and brackets omitted]; see Matter of Palmer v Champlain Val. Specialty, 149 AD3d 1342, 1342 [2017]; Employer: American Axle, 2010 WL 438153, *4-5, 2010 NY Wkr Comp LEXIS 2560, *12 [WCB No. 8030, 3659, Feb. 4, 2010]).
Claimant testified that, in November 2015, he attended an orientation session at the Office of Adult Career and Continuing Education Services—Vocational Rehabilitation (hereinafter ACCESS-VR) to establish an account there and that, on another occasion, he filled out an application for a job program with the Department of Labor. He further testified that, although he is retired from his union work and collecting his pension, he called his union to inquire about work. Claimant admittedly made no other efforts to find employment or pursue other vocational services, and he has not made or scheduled any further appointments with ACCESS-VR since the initial orientation. Given the minimal nature of claimant's attempts to find a job within his medical restrictions, and the absence of any evidence that his inability to obtain employment was caused by or related to his permanent partial disability, the Board's determination that claimant failed to maintain an attachment to the labor market is supported by substantial evidence (see Matter of King v Riccelli Enters., 156 AD3d at 1097-1098; Matter of [*3]Palmer v Champlain Val. Specialty, 149 AD3d at 1343-1344; Matter of Walker v Darcon Constr. Co., 142 AD3d 740, 741-742 [2016]; Matter of Kucuk v Hickey Freeman Co., Inc., 78 AD3d 1259, 1262-1263 [2010]).
We agree, however, with claimant's contention that the Board's assessment of a 33% loss of wage-earning capacity is not supported by substantial evidence. "In situations where, as here, a claimant sustains a permanent partial disability that is not amenable to a schedule award, the Board must determine the claimant's loss of wage-earning capacity in order to fix the duration of benefits" (Matter of Villalobos v RNC Industries LLC, 151 AD3d at 1158; see Workers' Compensation Law § 15 [3] [w]; Matter of Smith v New York City Hous. Auth., 147 AD3d 1184, 1185 [2017]). To that end, "chapter 9 of the [guidelines] sets forth the manner for determining the loss of wage-earning capacity for a claimant with a nonschedule permanent partial disability and provides that it is based on three types of input, namely, medical impairment, functional ability/loss and non-medical vocational factors" (Matter of Golovashchenko v Asar Intl. Corp., 153 AD3d 1475, 1476 [2017]; see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 44 [2012]). "The first two inputs are medical in nature, while the third is non-medical and concerns matters such as a claimant's education, skill, age and literacy" (Matter of Golovashchenko v Asar Intl. Corp., 153 AD3d at 1476; see Matter of Burgos v Citywide Cent. Ins. Program, 148 AD3d 1493, 1495 [2017], affd 30 NY3d 990 [2017]; Matter of Pravato v Town of Huntington, 144 AD3d at 1355). Although "[t]here is no simple formula to determine loss of wage earning capacity" (New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 47 [2012]; see generally Matter of Till v Apex Rehabilitation, 144 AD3d 1231, 1232-1234 [2016], lv denied 29 NY3d 909 [2017]), the Board states that a "medical impairment ranking is not to be used as a direct translation to loss of wage earning capacity" and, in that regard, "[t]he ultimate determination of loss of wage earning capacity is a legal one" (New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 44, 51 [2012]).
The Board is "vested with the authority to resolve conflicting medical opinions" and, as it did here, credited the May 2015 report of Marc Bergeron, the physician who conducted an independent medical examination of claimant (Matter of Maloney v Wende Corr. Facility, 157 AD3d 1155, 1156 [2018]; see Matter of Turner v New York City Dept. of Juvenile Justice, 159 AD3d 1236, 1237 [2018]). We find, however, that the information contained in that report relating to claimant's medical impairments and functional ability, together with the record evidence of non-medical vocational factors, does not support, as a matter of law, the finding that claimant sustained only a 33% loss of wage-earning capacity. As to claimant's permanent medical impairments, Bergeron categorized claimant under the guidelines with a class 3 lumbar and cervical spine impairment with a severity ranking of B. Assessing claimant's functional abilities and losses, which "is a key component in a [WCLJ's] determination of loss of wage earning capacity" (New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 44-45 [2012]), Bergeron opined that "claimant cannot return to his prior occupation as a heavy equipment operator" and that he is only capable of — even when considering each condition "in isolation" and not cumulatively — sedentary work consisting of no at-or-above shoulder activity, no large range of motion of the lumbar area and "minimized prolonged continuous activity" (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 48 [2012]). Bergeron further noted that, for both his cervical and lumbar area, claimant has limited exertional abilities for the amount of weight that he can push, pull, lift or carry and that claimant must not engage in any "stooping, reaching, crawling . . . work[ing] at heights, no ladders, no squatting, and no kneeling." Although claimant can operate a small motor vehicle, he may only do so for 10 to 15 minutes.
With regard to non-medical vocational factors, the Board recognized that although claimant finished high school, his age of 55 and limited vocational experience as a union heavy equipment operator have an aggravating impact on the reduction of claimant's wage-earning capacity. Moreover, while the Board noted that claimant has a driver's license, its utility, as reflected in Bergeron's report, is limited to 10-15 minutes of driving in a small car. Further, the Board's finding that claimant can presently read and write English is "'based on an inaccurate reading of the record or incomplete facts'" (Matter of Gullo v Wireless Northeast, ___ AD3d ___, ___, 2018 NY Slip Op 02388, *1 [2018], quoting Matter of Simpson v New York City Tr. Auth., 136 AD3d 1192, 1193 [2016]). Claimant testified that he is unable to currently read or comprehend language, especially numbers, and that because he is unable to personally take care of his daily needs, his wife attends to all of his general activities of daily living. In our view, given claimant's medical impairments, extensive functional limitations and losses and his limited vocational skills, the Board's finding that claimant sustained a 33% loss of wage-earning capacity is not supported by substantial evidence (see Matter of Golovashchenko v Asar Intl. Corp., 153 AD3d at 1477 [reversing the Board's assessment of a loss of wage-earning capacity of 60% where the record did not demonstrate that the claimant could perform light work and, to the contrary, indicated that the claimant could only perform less than sedentary work or sedentary work]; Matter of Wormley v Rochester City Sch. Dist., 126 AD3d 1257, 1258 [2015] [holding that substantial evidence supported the Board's finding of an 80% loss of wage-earning capacity where the claimant's back injury prevents prolonged sitting, walking, bending or lifting more than 10 pounds and where the claimant, in her fifties, has limited reading and math skills and lacks vocational experience in fields in which she could likely find employment]; see also Matter of Wohlfeil v Sharel Ventures, LLC, 155 AD3d 1264, 1265-1266 [2017]; Matter of Cameron v Crooked Lake House, 106 AD3d 1416, 1416 [2013]). Accordingly, the matter must be remitted for further proceedings to ascertain, based upon the record evidence before it, claimant's loss of wage-earning capacity in accordance with the guidelines (see Matter of Golovashchenko v Asar Intl. Corp., 153 AD3d at 1477).
Lynch, Clark, Aarons and Rumsey, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as found that claimant sustained a 33% loss of wage-earning capacity; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: At the conclusion of those hearings, the WCLJ apportioned 60% of claimant's overall disability to the 2011 injury and 40% to the 1992 injury.

Footnote 2: The Board also found that there was prima facie medical evidence of causally-related consequential depression and returned the case to the trial calendar for further record development of that issue.